STRAUS v. THE KANSAS CITY, ST. JOSEPH & COUNCIL BLUFFS RAILROAD COMPANY, *Appellant.*

| 75 | 185 |
| --- | --- |
| 43a | 349 |

| 75 | 185 |
| --- | --- |
| 111 | 340 |
| 49a | 107 |
| 50a | 562 |

| 75 | 185 |
| --- | --- |
| 60a | 280 |

| 75 | 185 |
| --- | --- |
| 65a | 485 |

| 75 | 185 |
| --- | --- |
| 141 | 95 |

| 75 | 185 |
| --- | --- |
| 80a | 156 |

| 75 | 185 |
| --- | --- |
| 154 | 666 |
| 154 | 667 |
| 82a | 579 |

| 75 | 185 |
| --- | --- |
| d158 | 312 |
| 84a | 147 |
| 84a | 148 |

| 75 | 185 |
| --- | --- |
| 102a | 283 |
| 102a | 1582 |

| 75 | 185 |
| --- | --- |
| 98a | 499 |

| 75 | 185 |
| --- | --- |
| 178 | 1628 |

1. **Railroad**: PASSENGER ALIGHTING FROM MOVING TRAIN: NEGLIGENCE. In an action by a passenger against a railroad company to recover for injuries sustained in alighting from a train as it was in the act of moving out from plaintiff's station;

   *Held*, that if the train was not stopped at the station a sufficient length of time to enable plaintiff, by the use of reasonable expedition, to get off before it was again started, and it was started while plaintiff was in the act of alighting, the company was liable. Or if insufficient time was allowed, but before plaintiff attempted to alight the train was started, and he then jumped from the train while its motion was still so slight as to be almost imperceptible and was injured, it was for the jury to determine from the age and physical condition of plaintiff and the attendant circumstances, whether his act constituted negligence. In such case the negligence of the company's servants in prematurely starting the train would support a recovery if the act of the passenger in jumping from the train should not be found by the jury to amount to concurring negligence.

   *Held*, further, that if the train was stopped a sufficient length of time to enable plaintiff to conveniently alight, and without any fault of the company's servants, he failed to do so, and the conductor, not knowing and having no reason to suspect that plaintiff was in the act of alighting, caused the train to start while he was so alighting, then the company would not be liable.

   *Held*, further, that it is not the duty of the conductor, in all cases, after allowing a sufficient time for passengers to get off, regard being had to their age, sex, physical condition and surroundings, to pass along the train and examine the platforms of each coach, to see whether there are any persons attempting to get off, before starting his train; but if he has reason to believe that any passenger, who has reached his destination, has not alighted, and though dilatory, may be in the act of alighting, and he starts his train without examination or inquiry, and such passenger is in the act of alighting when the train is started and is thereby injured, the company will

be liable; but when the conductor, after allowing sufficient time for passengers to alight, starts the train before the passenger is in the act of getting off, and after the train is in motion the passenger, who has been dilatory, jumps from the train and is injured, he cannot recover.

2. ———: CONTRIBUTORY NEGLIGENCE. Where concurring negligence of the plaintiff proximately contributes to produce the injury complained of, there can be no recovery, unless the injury is also the direct result of the omission of defendant, after becoming aware of the danger to which the plaintiff is exposed, to use proper care to avoid injuring him.

*Appeal from Buchanan Circuit Court.*—HON. JOS. P. GRUBB, Judge.

REVERSED.

*Willard P. Hall* and *Strong & Mosman* for appellants, cited *Nelson v. R. R. Co.*, 68 Mo. 596; *Rains v. R'y Co*, 71 Mo. 164; *Moody v. R. R. Co.*, 68 Mo. 470.

*Woodson & Crosby* for respondent.

HOUGH, J.—In this action the plaintiff claimed damages in the sum of $5,000 for injuries received by him in attempting to alight, at a way station on the defendant's road, from a train of the defendant on which he was a passenger. The petition alleges in substance, that immediately upon the stopping of said train at Pickering station, which was plaintiff's destination, the plaintiff, with all convenient haste, but in the exercise of due care, attempted to leave the train, and while in the act of stepping from the train upon the platform at the depot, and before he had sufficient time to get upon said platform, said train was negligently and recklessly started on its way by the servants in charge thereof, whereby plaintiff was thrown down between said platform and the moving train and was tightly and violently compressed between the same and thereby severely bruised and injured. The answer of the defendant denied all negligence on the part of its servants,

and averred that the injuries complained of resulted from plaintiff's own negligence.

The testimony of several witnesses for the plaintiff tended to support the allegations of the petition. The plaintiff himself testified as follows: "On the 26th day of November, 1877, I was a passenger on the defendant's train going to Pickering. Had bought a ticket from St. Joseph to Pickering. Just as the train whistled for Pickering, I got up from my seat and went to the door of the car. When it stopped I opened the door and started out, and car started just as I was in the act of getting off, with a sudden jerk, and I was thrown down between the car and the platform, and rolled around till I got to the end of the platform. I suffered a great deal for two or three weeks—I might say agony—laid on my back for six weeks. My back is injured to the present day. I was unable to do any work until after the 1st day of January, 1878. Changes in the weather affect me more or less. I feel them, and am not as strong as I used to be. My back is weak. I can't lift as I used to be able to."

Several witnesses testified that the plaintiff told them a short time after the accident, that he had been traveling on trains so much that he had become careless; that he did not notice that the train was moving, and got off backwards, and that nobody was to blame for his getting hurt but himself. Other witnesses testified that the defendant told them that the conductor was not to blame. The plaintiff, on his cross-examination, admitted that he stated to several persons that the conductor was not to blame, but said he so stated because he did not wish to get the conductor into trouble. But he denied that he ever stated to any one, that no one was to blame but himself. The conductor testified as follows: "The train stopped still. The stop was for at least one-half a minute. We stopped the usual length of time for stops at stations at which no business is to be transacted. After the train stopped I walked out on the depot platform, walked across to the cor-

ner of the depot and leaned up against the building a few seconds.     *     *     As I went across the platform to the depot, I looked to the left over my shoulder toward the rear of the train and saw the plaintiff coming down the steps of the car. I leaned against the depot a few seconds, and then gave the signal to the engineer to go ahead, and walked across the platform to the door of the baggage car, and went in. I went into the same door I came out of; went back into the same car. The car had not started when I went into it." The station agent at Pickering testified, in substance, that after the train stopped, he walked from his office across the platform to the train, got his mail from the train, and returned to the office door before the train started. He saw the plaintiff standing on the car platform looking through the door into the car, and saw him, after the train started, step off the car with the wrong foot, which whirled him around and off his feet.

At the request of the plaintiff, the court gave the following instructions: 1. "The court instructs the jury if they believe from the evidence that the plaintiff was, at the time stated in his petition, a passenger on defendant's train with a ticket from St. Joseph to Pickering, that said train did not stop long enough at Pickering to give plaintiff reasonable time to pass from his seat in the car to the station platform, and that plaintiff, by reason of the starting of the train while he (plaintiff) was in the act of stepping from the car, was thrown down between it and the station platform, and injured, without negligence on his part, they will find for plaintiff, and assess his damages at such sum, not exceeding $5,000, as they may deem a reasonable compensation for the injuries sustained by him."

3. "That if the jury believe from the evidence that the conductor of the train saw plaintiff standing on the car platform, and knew that he wished to stop at Pickering, but without noticing or waiting to see whether he got off or not, gave a signal for starting the train, and the train was started while the plaintiff was in the act of stepping .

off, by reason of which starting plaintiff was thrown down and injured, they will find for the plaintiff."

7. " That if the jury find for the plaintiff, they will, in estimating the damages, take into consideration the age and situation of plaintiff, his bodily and mental anguish resulting from the injury received, the actual expenses to which he has been subjected by reason thereof, the loss from not being able to work, and the extent to which his ability to earn a livelihood has been impaired by the injuries received."

9. " That although the plaintiff may have failed to exercise ordinary care and prudence, which failure may have contributed to the injury complained of, yet, if the agents and employes of the defendant were guilty of negligence or carelessness in starting the train, which was the direct cause of the injury, and might, by the exercise of ordinary care and prudence, have prevented the injury, the defendant is liable."

The following instructions were given at the request of the defendant :   1. " The plaintiff cannot recover unless the evidence shows a case of negligence on the part of defendant, and if the jury believe from the evidence that both parties by their negligence immediately contributed to produce the injury, the plaintiff cannot recover, and their verdict should be for defendant."

2.   " The burden of proof to establish the negligence of defendant, or of its employes, is upon the plaintiff, and unless said negligence is established by a preponderance of the evidence to the satisfaction of the jury, they will find for the defendant."

3.   "If the jury believe from the evidence that the negligence of plaintiff contributed directly to his injury, in whole, or in part, they will find for the defendant, although they may believe from the evidence that defendant and its employes were also guilty of negligence."

The court on its own motion gave the following: "The court instructs the jury that such statements of the plaintiff

as the jury may believe from the evidence were made to witnesses, are evidence against him of the truth of the facts as stated."

The only instructions asked by the defendant and refused by the court, which it will be necessary to notice, are the following : 5. "If the jury believe from the evidence that the train in proof at the time of the accident stopped long enough to enable plaintiff with reasonable care to get off of said train safely, then the jury will find for the defendant."

7. "If the jury believe from the evidence that the plaintiff opened the door of the car to get off at the station just as the cars stopped at the station, and that instead of getting off at once he stopped and looked back into the car, or to talk to some person and didn't attempt to get off until the cars started again, and was then thrown down and injured in so attempting to get off, they will find for defendant."

The plaintiff recovered judgment for $500, and the defendant has appealed.

If the servants of the defendant did not halt the train at Pickering station a sufficient length of time to enable the plaintiff, by the use of reasonable expedition, to get off before it was again started, and it was so started while plaintiff was in the act of alighting, whereby he was thrown down and injured, the defendant is undoubtedly liable. Hutchinson Carriers, § 612. Or, if an insufficient period of time was allowed the plaintiff for safe and convenient egress from the cars, but, before he attempted to alight, the train was started, and he then jumped from the train while its motion was still so slight as to be almost imperceptible, and was injured, it was for the jury to determine from the age and physical condition of the plaintiff, and the attendant circumstances, whether such act constituted negligence. *Doss v. M., K. & T. R'y Co.*, 59 Mo. 27; *Nelson v. A. & P. R. R. Co.*, 68 Mo. 593. In such case, the negligence of the

1. RAILROADS: passenger alighting from moving train: negligence.

company's servants, in prematurely starting the train, will support a recovery, if the act of the passenger, in jumping from the train, should not be found by the jury to amount to concurring negligence.

If the train was stopped a sufficient length of time for plaintiff to conveniently alight, and, without any fault of defendant's servants, he failed to do so, and the conductor, not knowing, and having no reason to suspect, that plaintiff was in the act of alighting, caused the train to start while he was so alighting, then the defendant would not be liable.

We do not conceive it to be the duty of the conductor, in all cases, after allowing a sufficient time for passengers to get off, regard being had to their age, sex, physical condition and surroundings, to pass along the train and examine the platform of each coach, to see whether there are any persons attempting to get off, before starting his train; but if he has reason to believe that any passenger who has reached his destination, has not alighted, and, though dilatory, may be in the act of alighting, and he starts his train without examination or inquiry, and such passenger is in the act of alighting when the train is started, and is thereby injured, then the company will be liable. But when the conductor, after allowing a sufficient time for passengers to alight, starts the train before the passenger is in the act of getting off, and is, therefore, guilty of no negligence, and after the train is in motion, the passenger who has been dilatory, jumps from the train and is injured, he cannot recover.

Applying these rules to the case at bar, it will be seen that the third instruction given for the plaintiff improperly ignores the question whether the train was stopped a reasonable length of time to enable the plaintiff to get off.

The ninth instruction given for the plaintiff, is in conflict with the third given for the defendant, and does not **2. ——: contributory negligence.** conform to the views herein expressed, and to what may now be regarded as the settled law of this State—that when the concurring negligence of

the plaintiff proximately contributes to produce the injury complained of, there can be no recovery unless such injury is also the direct result of the omission of the defendant after becoming aware of the danger to which the plaintiff was exposed, to use a proper degree of care to avoid injuring him. *Nelson v. A. & P. R. R. Co.,* 68 Mo. 593.

The fifth instruction asked by the defendant, was properly refused by the court. Its phraseology is such as to exempt the defendant from liability although guilty of negligence proximately contributing to produce the injury, after becoming aware of the concurring negligence of the plaintiff.

The seventh instruction asked by the defendant was also properly refused, for the reason that it is not, as it should be, predicated upon the hypothesis that the train was stopped a reasonable length of time to enable the plaintiff to get off.

The judgment will be reversed and the cause remanded. The other judges concur.