STRAUS v. THE KANSAS CITY, ST. JOSEPH & COUNCIL
BLUFFS RAILROAD COMPANY, *Appellant*.

1. **Railroad**: PASSENGER ALIGHTING FROM TRAIN : NEGLIGENCE. In an action against a railroad company by a passenger for injuries received in alighting from a train at the company's station, if the train did not stop a sufficient length of time to enable the plaintiff, by the use of reasonable expedition, to get off before it was again started, and it was so started while plaintiff was in the act of alighting, whereby he was thrown down and injured the company is liable for the injury. Affirming *Straus v. Kansas City, St. Joseph & Council Bluffs Ry. Co.*, 75 Mo. 185.

86 421
39a 500

86 421
129 404

86 421
78a 164

86 421
f 152 334

2. —— : —— : ——. If the train was stopped a sufficient length of time for plaintiff to conveniently alight, and without any fault of defendant's servants, he failed to do so, and the conductor not knowing and not having reason to suspect that the plaintiff was in the act of alighting, caused the train to start while he was so alighting, the defendant would not be liable.

3. —— : —— : ——. If a conductor has reason to believe that any passenger who has reached his destination, though dilatory, may be in the act of alighting, and he starts his train without examination, or inquiry, and such passenger is in the act of alighting when the train is started, and is thereby injured, the company will be liable.

4. Practice : REMARKS OF COUNSEL : DISCRETION OF TRIAL COURT. It is for the trial court to determine whether counsel in the conduct of a case, and in argument to the jury, transcend the limits of professional duty and propriety.

5. —— : —— : PROVINCE OF JURY. Where counsel cannot agree as to the evidence in a cause, or mis-state the evidence, in argument, to the jury, it is the peculiar province of the jury, and not of the court, to determine what the evidence was.

6. —— : EVIDENCE : OPINION OF WITNESS. It is not reversible error for a non-expert witness, who testifies to the facts in a case, to give an opinion based upon such facts.

*Appeal from Buchanan Circuit Court.*—HON. JOS. P. GRUBB, Judge.

AFFIRMED.

*Strong & Mosman* for appellant.

(1) The court erred in giving plaintiff's first instruction. The fact that the company has been guilty of negligence, followed by an injury, does not make it liable, unless the injury was occasioned by that negligence. *Harlan v. Ry. Co.*, 65 Mo. 25. It affirmatively declared that plaintiff was entitled to "a reasonable time to pass from his seat in the car to the station platform." This was not warranted by the law or the facts. *Imhoff v. Ry. Co.*, 20 Wis. 344; *Straus v. Ry. Co.*, 75 Mo. 191. The instruction ignored the question of negligence, the

gist of the action. *State v. Hill*, 69 Mo. 451; *Moffatt v. Conklin*, 35 Mo. 453; *Randle v. Ry. Co.*, 65 Mo. 325; *Brown v. Street Ry.*, 49 Mich. 153; *Mitchell v. Ry. Co.*, 51 Mich. 236. "The instruction in question withdraws from the jury all attendant circumstances, and predicates the right of plaintiff to recover upon the mere failure to stop the train, and plaintiff's injury in attempting to get off just as the train started, thus ignoring facts essential to a recovery by plaintiff." *Price v. Ry. Co.*, 72 Mo. 418-20; *Railroad Co. v. Aspell*, 23 Pa. St. 147; *Staples v. Canton*, 69 Mo. 592; *Brown v. Congress Street R. Co.*, 49 Mich. 153; *Chicago Ry. v. Smith*, 46 Mich. 510; *Mitchel v. Ry. Co.*, 51 Mich. 236; *Haley v. Ry. Co.*, 25 Kas. 56-7; *Ry. Co. v. Flinn*, 24 Kas. 640; *Wyatt v. Ry. Co.*, 62 Mo. 408; *Hulsenkamp v. Ry. Co.*, 34 Mo. 54; *Thomas v. Babb*, 45 Mo. 387-8. It was inconsistent with the other instructions. *Thomas v. Babb*, 45 Mo. 384; *Seymour v. Seymour*, 67 Mo. 303; *Modisett v. McPike*, 74 Mo. 636. It was in conflict with the other instructions. *Price v. Ry. Co.*, 77 Mo. 508; *Stevenson v. Hancock*, 72 Mo. 614. (2) There was no evidence upon which to base the second instruction for plaintiff. *Price v. Ry. Co.*, 72 Mo. 416; *Edens v. Ry. Co.*, 72 Mo. 212; *Ry. Co. v. Stark*, 38 Mich. 714. (3) Plaintiff's fourth instruction was an abstract proposition of law, too general in its terms, and misleading. *Price v. Ry. Co.*, *supra*; *Yarnall v. Ry. Co.*, 75 Mo. 583; *Nicholas v. Winfrey*, 79 Mo. 551. (4) Plaintiff's fifth instruction was too general. *Stewart v. Clinton*, 79 Mo. 603; *Curtis v. Ry. Co.*, 20 Barb. 282. It was not based on the evidence. *State ex rel. v. Emmerson*, 76 Mo. 608. It assumed facts. *State v. Wheeler*, 79 Mo. 366; *Merritt v. Given*, 35 Mo. 98. It did not fairly and plainly state the law. *Railroad v. Thul*, 32 Kas. 255; *Callaway County v. Clark*, 32 Mo. 305; *Taylor v. Monroe*, 43 Conn. 96; *Machine Co. v. Ry. Co.*, 7 Mo. 203; *Lambert v. Craig*, 12 Pick. 199. The damages

were excessive. *Kalb v. O'Brien*, 86 Ill. 210 ; *Delie v. Ry. Co.*, 51 Wis. 400 ; *Sawyer v. Ry. Co.*, 37 Mo. 264, (5) The instructions given by the court were erroneous. (6) It was error to refuse defendant's first, third and fifth instructions. They were justified by the pleadings and the evidence. Defendant's sixth instruction was given by the court on its own motion, on the former trial, and should have been given. The defendant's second, ninth, tenth and thirteenth instructions should have been given. They were supported by the evidence and were not embraced in others given, and were correct applications of the law to the facts of the case. (7) The court erred in permitting the witnesses, Hose and Mrs. Jackson, to testify to their opinions. *Sparr v. Wellman*, 11 Mo. 234 ; *N. E. Glass Co. v. Lovell*, 7 Cush. 321 ; *White v. Ballou*, 8 Allen, 408 ; *Gavisk v. Ry. Co.*, 49 Mo. 277 ; *Koons v. Ry. Co.*, 65 Mo. 597–8 ; *Wagner v. Jacob*, 26 Mo. 530. (8) The case should be reversed for the remarks of plaintiff's counsel, in his opening speech to the jury. *State v. Lee*, 66 Mo. 165 ; *State v. Upham*, 38 Me. 261 ; *Fletcher v. State*, 49 Ind. 124 ; *Devies v. Haywood*, 63 N. C. 53 ; *Rolfe v. Rumford*, 66 Me. 564 ; *Brown v. Swineford*, 44 Wis. 282 ; *Cleveland Paper Co. v. Banks*, 15 Neb. 22 ; *Coble v. Coble*, 79 N. C. 589 ; *State v. Mahly*, 69 Mo. 315.

*Woodson, Green & Burnes* for respondent.

(1) The plaintiff's first instruction properly declared the law. *Straus v. Ry. Co.*, 75 Mo. 185. (2) Plaintiff's second instruction was supported by the testimony. It did not present a theory of the case not stated in the petition. (3) Plaintiff's fourth instruction was a correct statement of the law. (*a*) The question as to whether there was any contributory negligence is one for the jury to determine in all cases in which there is any conflict of evidence on the point. *Filer v. Ry. Co.*, 49 N. Y. 47 ;

*Greenleaf v. Ry. Co.*, 29 Ia. 14; *Herrick v. Sullivan*, 120 Mass. 576; *Canal Co. v. Bentley*, 66 Pa. St. 30; *Newhouse v. Miller*, 35 Ind. 436; *Smith v. Ry. Co.*, 61 Mo. 588; *Manley v. Ry. Co.*, 74 N. C. 655; *Willard v. Pinard*, 44 Vt. 34; *Schierhold v. Ry. Co.*, 40 Cal. 447; *Ry. Co. v. State*, 36 Md. 366; *Ry. Co. v. Brady*, 17 Kas. 380; *Ry. Co. v. Mason*, 51 Miss. 234.    (b) And the burden of proof is on the defendant to show contributory negligence. *Frech v. Ry. Co.*, 39 Md. 574; *Hays v. Gallagher*, 72 Pa. St. 136; *Hoyt v. Hudson*, 41 Wis. 105; *Hocum v. Weithrick*, 22 Minn. 152; *New Jersey, etc., Co. v. Nichols*, 32 N. J. Law, 166; *Ry. Co. v. Gladman*, 15 Wall. 401; *Buesching v. Gas Light Co.*, 73 Mo. 229.    (c) Plaintiff is not bound to prove due care on his part, but the jury are at liberty to infer it from absence of appearance of fault on his part, either positive or negative.    *Mayo v. Ry. Co.*, 104 Mass. 137; *Marble v. Ross*, 104 Mass. 44; *Johnson v. Ry. Co.*, 20 N. Y. 65; *Ry. Co. v. Cragin*, 71 Ill. 177. There was no evidence of contributory negligence on the part of plaintiff.    (4) Plaintiff's fifth instruction is supported by the evidence. The jury had the right to take into consideration plaintiff's age, situation in life, bodily and mental anguish, and expenses caused by the accident. *Peoria Bridge Ass'n v. Loomis*, 20 Ill. 235; *Ransom v. Ry. Co.*, 15 N. Y. 415; *West v. Forrest*, 22 Mo. 344; *Bannon v. Ry. Co.*, 24 Md. 108.    (5) Plaintiff's fifth instruction was correct.    *State v. Anderson*, 19 Mo. 241; *Rose v. Bates*, 12 Mo. 30.    (6) The fourth instruction, given by the court of its own motion, was not prejudicial to defendant.    Plaintiff is not bound to prove more than enough to raise a fair presumption of negligence on the part of the defendant, and of a resulting injury to himself.    *Ellis v. Railroad*, 2 Ired. (N. C.) Law, 138; *Herring v. Ry. Co.*, 10 *Id.* 402; *Scott v. London Dock Co.*, 3 Hurl. & C. 596.    (7) The seventh instruction, given by the court, of its own motion, was

not prejudicial to defendant. The jury, from the facts, are to say whether the plaintiff contributed to the injury. Cases *supra*, third; *Bigelow v. Reed*, 51 Me. 325; *Wilds v. Hudson Railroad*, 24 N. Y. 430; *Hoben v. The Burlington, etc., Ry. Co.*, 20 Iowa, 562; *Brand v. Schenectady, etc., Ry. Co.*, 8 Barb. 368. (8) The statements made by Mr. Green, one of the plaintiff's counsel, were arguments fairly deducible from the facts. The matter was not material to the issue, and not being material, it cannot be alleged as ground for reversal. (9) That part of the testimony of Hose and Jackson, to which defendant excepts, was clearly competent, because it was a question that was susceptible of no better evidence.

NORTON, J.—This cause is before us for the second time on defendant's appeal from a judgment of the circuit court of Buchanan county. Plaintiff, who was a passenger on defendant's train, destined for Pickering, a station of its road, sued to recover damages for injuries sustained by him, by reason of the alleged negligent failure of defendant to stop its train a sufficient length of time at said station to enable him to get off at said station, and in prematurely starting the train while he was in the act of alighting, whereby he was thrown between the cars and platform of the depot and injured.

The opinion delivered in this case when it was first before the court, is reported in 75 Mo. 185. The evidence bearing on the point there raised by counsel, and, also, now raised, that there was no evidence on which to submit the question to the jury, that the conductor either knew, or had good reason to believe, that plaintiff was in the act of alighting from the train, when he ordered it to start, is thus stated in the opinion: "The plaintiff himself testified as follows: 'On the twenty-sixth day of November, 1877, I was a passenger on the defendant's train, going to Pickering. Just as the train whistled for

Pickering, I got up from my seat and went to the door
of the car. When it stopped, I opened the door and
started out, and the car started, just as I was in the act
of getting off, with a sudden jerk, and I was thrown
down between the car and the platform, and rolled
around till I got to the end of the platform.', * * *
Several witnesses testified that the plaintiff told them, a
short time after the accident, that he had been traveling
on trains so much that he had become careless ; that he
did not notice that the train was moving, and that he
got off backwards, and that nobody was to blame for his
getting hurt but himself. * * * The plaintiff, on his
cross-examination, admitted that he stated to several
persons that the conductor was not to blame, but said he
so stated because he did not wish to get the conductor
into trouble. But he denied that he ever stated to any
one that no one was to blame but himself. The conduc-
tor testified as follows : 'The train stopped still. The
stop was at least for one-half minute. We stopped the
usual length of time for stops at stations at which no
business is to be transacted. After the train stopped I
walked out on the depot platform, walked across to the
corner of the depot and leaned up against the building a
few seconds. * * * As I went across the platform to
the depot, I looked to the left, over my shoulder, to the
rear of the train, and saw the plaintiff coming down the
steps of the car. I leaned against the depot a few sec-
onds, and then gave the signal to the engineer to go
ahead, and walked across the platform to the door of
the baggage car and went in. I went into the same door
I came out of ; went back into the same car. The car
had not started when I went into it.' The station agent
at Pickering testified, in substance, that after the train
stopped, he walked from his office across the platform to
the train, got his mail from the train, and returned to
the office door before the train started. He saw the
plaintiff standing on the car platform looking through

the door into the car, and saw him after the train started step off the car on the wrong foot, which whirled him around and off his feet.''

On this state of facts the judgment was reversed, not because there was no evidence on which to submit to the jury the question whether the conductor knew, or had good reason to believe, that plaintiff was in the act of alighting from the train when he started it, but the judgment was reversed and the cause remanded for another trial on the distinct ground that an instruction which did submit that very question was erroneous only in that it ignored the question as to whether the train in fact was stopped a reasonable length of time to enable the plaintiff to get off, and the further ground that there was a conflict between an instruction given for plaintiff and one for defendant. The point then made that there was no evidence upon which to submit the case to the jury was not sustained, but, on the contrary, in speaking of the facts in evidence the court proceeded to lay down the law applicable, and for the guidance of the trial court on a re-trial, as follows :    '' If the servants of the defendant did not halt the train at Pickering station a sufficient length of time to enable the plaintiff, by the use of reasonable expedition, to get off before it was again started, and it was so started while plaintiff was in the act of alighting, whereby he was thrown down and injured, the defendant is undoubtedly liable.''

'' If the train was stopped a sufficient length of time for plaintiff to conveniently alight, and, without any fault of defendant's servants, he failed to do so, and the conductor, not knowing and having no reason to suspect that plaintiff was in the act of alighting, caused the train to start while he was so alighting, the defendant would not be liable.''

An examination of the record now before us shows that the evidence, as to what took place with reference to stopping and starting the train when the accident oc-

curred, is substantially the same as reported in 75 Mo. *supra*, and it also shows that on the re-trial of the cause the trial court gave an instruction strictly in harmony with the theory indicated in the opinion of the court. For that reason, and believing the questions therein settled, and the principles therein announced to have been correctly settled, and fully supported by the authorities cited in the opinion, we decline to re-discuss or re-investigate them, further than to say that we are not disposed to relax any of the rules of law which impose on a common carrier the strictest observance of the contractual obligations it assumes to a person whom it has received as a passenger, not only in using the utmost care and caution in carrying him, but also the same care and caution in stopping and starting its trains at the station to which it has agreed to carry him.

The conductor, in his evidence, stated that the train stopped thirty seconds, or less; "that he stepped on to the platform at the depot and looked back *southward* to the passenger coach, and saw Straus on the steps of the passenger coach, as though coming down the steps to the depot platform; the train stopped a half minute, or less;" that he walked on four or five steps to the corner of the depot, turned round facing the train, and looked *northward* toward the engine, and gave the signal to start. To hold, under these facts, that the failure of the conductor to ascertain that plaintiff had alighted from the train before he gave the signal to start it, which fact he could have ascertained (and which, under the circumstances, it was his duty to ascertain), had he looked south where he first saw plaintiff on the steps, is no evidence of negligence, would be to hold that a conductor might shut his eyes, under circumstances which made it his duty to look. In the opinion in this case, in 75 Mo., *supra*, it is said that if a conductor "has reason to believe that any passenger, who has reached his destination, has not alighted, and, though dilatory, may be in

the act of alighting, and he starts his train without examination or inquiry, and such passenger is in the act of alighting when the train is started, and is thereby injured, the company will be liable." Although the conductor stated that the train stopped thirty seconds or less, although he saw plaintiff on the steps as though coming down the steps, a few seconds before he gave the signal and started the train, he made neither examination nor enquiry, but instead of simply casting his eye, the work of a moment, south towards the place where he had seen plaintiff a moment before, to ascertain whether he had reached the platform, he looked away from him, to the north, and gave the engineer the order to go, which resulted, according to the evidence of plaintiff, in putting his life in great peril by being rolled between the train and depot platform, and dumped to one side when the end of the platform was reached.

Another ground of objection is that defendant applied for a continuance on account of the absence of one Wallbridge, a material witness, setting out in the application what it expected to prove by him, and thereupon plaintiff admitted that said Wallbridge, if present, would testify as stated in the application, whereupon the court overruled the application, and the trial proceeded, during which the evidence of said Wallbridge, as set out, was read to the jury. After all the evidence was put in and instructions given, Mr. Green, one of plaintiff's counsel, in his opening speech to the jury, said: "Why is not witness Wallbridge here to testify and let us cross-examine him? He lives here in this city; he has left defendant's employ. They (meaning defendant's counsel), tell us he has been sent for and won't come. Why won't he come? While he was in their service he swore to suit them. He will not come now and swear to the truth for fear of being prosecuted for perjury by this soulless railroad corporation," or language

to that effect. When defendant's counsel objected to this line of argument, and asked the court to interfere and rebuke counsel for discussing facts not in evidence, the court interfered no further than to tell the jury, in substance, that they were only to consider such matters as were shown by the evidence. The circuit judge who heard these remarks, and was cognizant of the circumstances under which they were made, and who was presumably acquainted with the intelligence of the jury to whom they were made, and with the ability of counsel for defendant, who were to follow Mr. Green, to explain to the jury that defendant had asked the court to continue the cause on account of the absence of Wallbridge, and in order that it might have him in attendance, and that the continuance was prevented by the admission of Mr. Green himself, that the witness, if present, would testify to the facts as set out in the application, was in a better position than we are to determine how far he should interfere and rebuke counsel, and whether what was said would or not be likely to prejudice the jury against the defendant. *State v. Hamilton*, 55 Mo. 520.

The court did interfere, and what was said by the judge to the jury was equivalent to telling them to disregard the remarks made by Green. Can we say that the trial judge exercised his discretion improperly in not going further than this? If so, what rule shall be laid down for the government and guidance of *nisi prius* judges in such cases? Looking at it from my standpoint, and presuming, as I may (what the circuit court, perhaps, knew), that those who composed the jury were men of ordinary intelligence, and understood the obligations of the oath they had taken, such remarks, if calculated to prejudice them at all, would be more likely to prejudice them against the plaintiff than defendant, because of his counsel having resorted to a line of argument so easily exposed and turned against him. This court has in sev-

eral instances reversed judgments where counsel, in the closing argument, where there was no opportunity for reply, were permitted to mis-state the law without rebuke, but in no case, that I am aware of, has this been done when improper remarks were made as to the evidence, by counsel in an opening argument, where such statements could be corrected by counsel in reply. It is the common experience of all judges that in most trials had before them, where there is evidence on both sides, that opposing counsel differ in their understanding as to what the evidence was in the case, and in such cases it is the peculiar province of the jury, and not of the court, to determine between them.

During the trial plaintiff read the deposition of Andrew Hose, who testified that "he was on the train when plaintiff was injured, and that the train came to a dead stop and started immediately; that he, Straus, as soon as the train stopped, walked out of the car to get off, and just as he was stepping off, the train started with a jerk and he fell; Straus was standing right in the car door, and as soon as it halted he walked out to get off; [the stop of the train was not long enough for him to step from the car door to the platform, in my opinion."] The above statement, included in brackets, was objected to on the ground that it was the expression of the opinion of the witness; the objection was overruled, and the evidence received. The deposition of Amanda Jackson was also read, who testified as follows: "I was on the train at the time a young man by the name of Straus was injured; he was sitting in front of me; at the time the train came to Pickering I was about the center of the train, and he was in front of me. As the train approached the depot at Pickering, he started to get off; the train did not come to a stand still, at all, to the best of my knowledge. [I don't think it stopped long enough for any one to get off with safety.] I don't think it stopped at all." The same objection was made to such

of the above as is included in brackets, which was also overruled. This action of the court is also assigned for error.

If these witnesses had been allowed simply to give their opinion, without more, that the train did not stop long enough for plaintiff to get off, the rule invoked by defendant that a witness should not be permitted to give his opinion, but should state facts, would apply, and might justify an interference with the judgment. But in this case, Mrs. Jackson expressed the opinion that the train did not stop long enough for plaintiff to alight, and swore as a fact that the train did not stop at all, and emphasizes this fact by repeating it. Witness Hose expressed the same opinion, and in the same connection swears positively to facts conclusively showing that the train did not stop long enough for plaintiff to alight; he testified that as soon as the train stopped he saw the plaintiff walk out of the car door to get off, and, just as he was stepping off, the car started with a jerk, and he fell. In face of the facts thus sworn to by these witnesses, and the statutory prohibition (section 3775) that no judgment shall be reversed unless error has been committed materially affecting the merits of the action, to reverse this judgment for the last error assigned would be wholly unwarranted. Besides this, the rule that the opinion of a non-expert witness is not to be received in evidence, has its exceptions. Where the value of property is in question, a witness, who states that he is acquainted with the value of that kind of property, may give his opinion of the value of the property in dispute. So, where the question of the sanity of a person is involved, a witness may give his opinion, provided he states the facts upon which it is founded. The length of time that the train stopped, to some extent, involved an expression of opinion. When the conductor

testified that the train stopped "half a minute or less," it was nothing more than the expression of his opinion.

The instructions given in the case, being in strict harmony with the law as laid down in 75 Mo., *supra*, and finding nothing in the record justifying an interference with the judgment, it is hereby affirmed. Ray and Black, JJ., concur.

SHERWOOD, J., DISSENTING.—Called upon as one of the judges of this court to say whether I concur in the foregoing opinion, I say I dissent, and I say so for these reasons:

I. *There is not a scintilla of testimony that the conductor knew that plaintiff was in the act of alighting when he gave the signal for the train to start.*

The tendency of the testimony, and its only tendency, is to show that the conductor had every reason to believe that the plaintiff, seen by him on the steps of the rear passenger car, and in the apparent act of alighting on the platform, had stepped down from the car, before he gave the starting signal. The conductor was in the baggage car when the train stopped; he stepped out of the side door of the baggage car, and as he did so, looking southwardly, he saw plaintiff on the steps, etc., and then the conductor, being on the depot platform, walked four or five steps or more across that platform to the corner of the depot building, then turned around, facing the train and looking northward toward the engine, called out, "all aboard," and raised his hand, gave the signal to the fireman for starting, then walked back across the depot platform to the baggage car from which he had come, mounted into it, and after he did so, the train, which had stopped its usual length of time, started; and after the train had moved some sixty feet it was stopped by the ringing of the bell.

The testimony of the conductor is supported by that of the station agent Harmon, who testified that the

train stopped the usual time; who, hearing the train approaching, took the United States mail sack in one hand, and some company mail in the other, and when the train stopped, came out of the depot door just as it did so, saw plaintiff on car platform in front of him; walked diagonally across station platform in a northeast direction, twenty-five or thirty feet, to the door of the baggage and mail car, exchanged mail with the United States mail agent and baggage man, turned and walked back to door of depot; turned around before going in, saw plaintiff coming down the car steps, the car standing still, with his attention divided between what he was doing and the car window; and when the car commenced to move, noticing plaintiff was inattentive and was about alighting on his *right foot*, and, knowing this would be dangerous, called out to him, "look out, or you will fall," when plaintiff, who was facing westward, the car moving northward, touched, or appeared to touch, the platform with his *right foot* and fell forward with the train, and that if he had been paying attention to what he was doing he need not have fallen at all. Harmon, also, corroborates the testimony of Heaton, the conductor, as to the latter getting off the train after it stopped, walking across the depot platform to the corner of depot, turning, calling "all aboard," and giving the signal for starting the train. The testimony of Harmon is supported by that of *plaintiff himself*, who says that, as he was coming down the steps of the car, he saw Harmon, the station agent, standing near the door of the waiting room facing him; that Harmon called out, as he was on the bottom step in the act of stepping off, "*look out, or you will fall;*" that he does not know *on which foot* he tried to alight. Bryant, also, fully corroborates the conductor's testimony. And the plaintiff, when on the stand, testified that *he did not blame the conductor for being hurt;* that he had testified on a former trial that he told Clutter and Southerland the

same thing.    Several witnesses testified that plaintiff had made similar statements to them.

The foregoing is substantially a correct *resume* of the evidence on the point of the conductor's knowledge of the plaintiff's *status* at the time he signaled the train to start.    If there is in the record before me the slightest trace or indication of such knowledge, a patient reading of the evidence has failed to disclose it.    If this be true, then it must follow that the second instruction given on behalf of plaintiff, was fatally erroneous, and that there was no evidence on which plaintiff could base a recovery.    In my opinion, the plaintiff's sworn admission, that the *conductor was not to blame*, is intrinsically sufficient to send the cause out of court, as much so as if the plaintiff had in terms admitted that the *defendant company* was not in fault.    If the *conductor* was not to blame, *who was, pray?*    This is sufficient to dispose of this cause without more.    When it was here before, the evidence was not discussed, so far as we can judge by the report in 75 Mo. 185.    But it was then and there declared "as the settled law of this state that when the concurring negligence of a plaintiff proximately contributes to produce the injury complained of, there can be no recovery, unless such injury is, also, the direct result of the omission of the defendant, *after becoming aware of the danger to which the plaintiff was exposed*, to use a proper degree of care to avoid ·injuring him."    Applying that principle now, and bearing in mind the evidence, what becomes of plaintiff's case?

II.    I have not the time to discuss the instructions in detail.    Of those for the plaintiff, the first one will be found, on examination, to violate the rule so frequently and so recently announced by this court, that hypothetical instructions, which authorize a recovery, must set forth *all the facts* authorizing such recovery.    *Sullivan v. Ry.*, Oct. Term, 1885, and cases cited.

III.    If it be said of the evidence in this cause that

it is the same, substantially, as before, and that this court, by failing to discuss it, has tacitly sanctioned its sufficiency, I have this to say, that this court, when this cause was here before, seems to have contented itself with pointing out several errors in the instructions, and then, after announcing the controlling principle of law in the case, to have sent it back, possibly for re-trial. Sometimes cases are treated too gingerly, sent back to plague the trial courts, and then to return to us, when, if the evidence were carefully examined, it would have been found that plaintiff's own evidence gave him no standing in court. But, granting that this court com mitted error in failing to discuss the evidence when the cause was here before, this should not preclude us from doing so *now*. Error is not sacred; it has no vested right to existence; and it becomes us as *men*, certainly as *judges*, whenever error is discovered for the first time, to confess and to forsake it at the earliest opportunity. Prov. xxviii., 13.

A noted example of this kind, in this court, is found in the case of *Hamilton v. Marks*, 63 Mo. 167, where the trial court having tried the cause on a correct view of the law, this court, in 52 Mo. 78, reversed the judgment and sent it back for re-trial on an incorrect doctrine, and it was thus re-tried, but on coming back here, the law was correctly declared, just as the circuit court first held, and the judgment was again reversed. And that case by no means stands alone in the judicial annals of this court. And, in my opinion, it makes no matter that the error was one *in pais*, instead of one in law. If gross and palpable injustice has been done, such as I think has occurred in this case, it should be corrected, and it will be a reproach on the administration of justice if it be not done.

Let me mention another case where this court, being apprised thereof, has confessed and forsaken its error; error committed and error forsaken in the same cause.

Take the case of *Bell v. Ry. Co.*, 72 Mo. 50.   A boy was standing on the railroad track in broad daylight, and while standing there was run over and killed by a passing train of cars ; the evidence was discussed and so were the instructions, but the evidence was not declared insufficient; several of the instructions were declared improper, and the judgment was reversed and the cause remanded, *presumably* for a new trial, as no hint or intimation was given contrawise.   Well, the cause was re-tried on the *theory of the law, as laid down by this court*, and the plaintiff again recovered, and the defendant came here again on appeal ; the evidence *all one* as before ; the cause was re-argued, Ray, J., wrote the opinion of the court, affirming the judgment ; a motion for re-hearing was filed on the ground that there was *no evidence to support the verdict*.   What did this court do ? Did it continue to wallow in the slough of flagrant misapprehension into which it had fallen ?   Nay, verily.   It granted the motion ; it re-heard the cause ; it reversed the judgment on the *sole* ground that there was *no evidence*, whereon to build the verdict.   Norton, J., concurring, *post*, p. —.   Why not take the same course now ?

But in this case it is said that, "the point then made that there was no evidence upon which to submit the case to the jury was not sustained," etc.   In *Bell's case*, such a point *was not taken until the cause was argued here the second time*.   Is it right to *punish* the *vigilant* and *reward* the *negligent ?   Queer law and justice that.*

IV.   The judgment should be reversed because of the admission of testimony of witnesses, non-expert, that the train did not stop long enough for any one to get off with safety.   This was incontestably erroneous ; a mere guess at best, and usurped the province of the triers of the facts.   This point was not passed upon when the cause was here before, and the same observation applies to some other points I have touched upon.

V.   The judgment should be reversed because of the

remarks made by counsel in reference to the absent witness, Wallbridge. The application for a continuance was in full and regular form, and authorized a continuance, which would have been granted, had not the counsel for plaintiff, under the provisions of section 3596, Revised Statutes, admitted that the witness, if present, would swear as in the affidavit set forth. This admission was made, and that portion of the affidavit which related to Wallbridge's evidence was read on the trial, which was all of the affidavit that could be read ; but plaintiff's counsel, against the earnest protest of counsel for defendant, was permitted to make the remarks already set forth in the opinion of the court. For similar remarks the judgment in a criminal cause was recently reversed in this court. *State v. Barham*, 82 Mo. 67, Norton, J., delivering the opinion. I can discover no reason why the same principle does not apply in a civil cause in similar circumstances. The statutory provisions referred to, are, at best, but a beggarly substitute for oral testimony, granting that the statute is constitutional. But, certainly, the diminished and feeble force of such statutory evidence should not be allowed to be still further weakened by remarks of counsel, who have solemnly agreed that the facts so stated shall be read in evidence ; and who then is allowed, without rebuke, to attack the very paper, but for the admission of whose recitals the cause would have been continued. I will not sanction, by my concurrence, such a travesty of judicial proceedings.

VI. The judgment should be reversed because counsel were permitted to palpably and grossly mis-state the facts in evidence. The views of this court in the *State v. Emory*, 79 Mo. 461, as to all proper invective that can be indulged in by counsel in the course of argument, I regard entirely correct, but counsel must not go further than this ; must not travel entirely out of the record, and appeal to the prejudices and passions of the jury by invective, based upon simulated facts ; and do this,

too, without even the semblance of the mildest form of rebuke from the trial court. Counsel for defendant cites authorities for this position, but the principle is too plain to require a precedent.

For these reasons, I am for reversing the iudgment.