# Montgomery & Eufaula Railroad Co. v. Stewart.

*Action by Passenger against Railroad Company, for Damages for Personal Injuries.*

1. *Negligence in attempting to get on moving train.*—If it can be said, in any case, to be negligence as matter of law, for a person to attempt to get on a train of cars moving at a rate of speed of not more than two miles an hour, it can not be affirmed of a person who, while waiting at a regular station for an approaching train, which ought to stop there, and which, recognizing his signal to stop, only checked its

speed to not more than two miles an hour, attempts to get on board while it is so moving, when the attendant circumstances show that there was no intention to make a full stop, and the conductor called out "All aboard." Under such circumstances, though the waiting passenger was not bound to attempt to get on the moving train, he is not guilty of negligence in accepting the invitation to do so, whether express or implied.

2.  *Same; rebutting negligence by railroad servants.*—Even if the passenger, under the facts stated, could be held guilty of negligence in attempting to get on board of the moving train, the railroad company would be responsible in damages for personal injuries sustained, on proof that the conductor, seeing his dangerous position while making the attempt, gave the signal for the train to move on; and if the train moved forward with a "sudden jerk," whereby he was knocked down and seriously injured, it might show such gross negligence as would authorize punitive damages.

3.  *Negligence in moving train from station.*—Ordinarily, a passenger train is only required to stop at a regular station long enough to enable passengers, by the exercise of due care and diligence, to get on and off with safety; but, when the train, instead of stopping, only checks its speed for a few minutes, the duty devolves on the railroad servants, before increasing the speed of the train, to see that no passenger, attempting to get on or off, is in a dangerous position.

4.  *Charge construed as whole.*—The general charge of the court, given *ex mero motu*, should be considered and construed as a whole, and in connection with the evidence; and if any part, when shaded, limited, or expanded on consideration with the other portions, asserts the law correctly, though faulty when considered by itself, it will not be ground of reversal.

5.  *Relevancy of evidence as to plaintiff's habit of getting on and off cars at same station for many years.*—As relevant to the question of negligence, considered in connection with all the attendant circumstances—the signal to stop the train, the answer to it, checking the speed of the train, &c.—plaintiff may testify that he had been in the habit, for fifteen years, of getting on and off the cars at the station at which the accident happened.

APPEAL from the Circuit Court of Montgomery.

Tried before the Hon. JOHN P. HUBBARD.

This action was brought by James R. Stewart, against the appellant corporation, to recover damages for personal injuries sustained by him while attempting to get on board of a train of cars at Perry's Mills, a station on defendant's road, about twelve or fifteen miles below Montgomery. According to the plaintiff's testimony, when the train approached the station, the customary signal was given for it to stop, and the signal was answered as usual; but the train, instead of stopping, only checked its speed to about two miles an hour; and on the conductor calling out "All aboard," plaintiff caught hold of the hand-railing at the end of one of the cars, and attempted to ascend the steps; but he failed to do so, was dragged some distance, thrown to the ground, and sustained serious injuries in his arm and shoulder. There was a demurrer to each count of the complaint, which was overruled; and issue was joined

[Montgomery & Eufaula Railroad Co. v. Stewart.]

on the pleas of not guilty and contributory negligence.   Under the rulings of the court, the plaintiff had a judgment on verdict for $1,500.   The assignments of error embrace all the rulings on the pleadings and evidence, charges·given, and the refusal of charges asked.   The points decided by this court do not require a statement of the facts in detail.

ARRINGTON & GRAHAM, for appellant.

TOMPKINS & TROY, contra.

McCLELLAN, J.—It is not controverted that the train which caused the injury complained of should have been, and was not, brought to a full stop at Perry's Mill, on the occasion in question.   Its speed was reduced to a rate not in excess of two miles an hour, in recognition of a signal to stop; and it proceeded past the station at that rate, giving no indications of coming to a stand-still, but, on the contrary, it seemed that the employès had no intention of stopping, or affording persons intending to take passage any further opportunity to do so, than was incident to the slow rate to which the speed of the train had been reduced.   The *gravamen* of each count of the complaint is, that while the plaintiff, who intended, was entitled, and was attempting to board the cars, was in such juxtaposition with them as that any sudden and unexpected acceleration of their speed involved great peril to him, the conductor, with a full knowledge of plaintiff's position, caused the train to lurch forward "with a jerk", so violently and unexpectedly as to throw plaintiff to the ground, and inflict the injuries complained of.   It is wholly immaterial on the case thus presented, whether plaintiff himself was negligent in assuming the position he occupied, or whether he assumed it on the invitation, or at the direction of the defendant's employès.   Their knowledge that he had assumed it, which is alleged, and which is supported by a tendency of the evidence, coupled with the knowledge, which must be imputed to them, that to suddenly increase the speed of a train while he was so situated would naturally endanger him, devolved upon them the duty, not only of using all reasonable effort to avoid disaster to him, if his position was perilous in and of itself, but also, and this whether the position was in itself a dangerous one or not, the imperative duty of abstaining from any act which would increase existing peril, or create danger where none existed before.   Conceding, therefore, that plaintiff was negligent in attempting to board the moving train as alleged in the first count, or in holding on to the railing of the steps and keeping

pace with the train, as alleged in the second count; yet, if the danger might have been avoided by due care on the part of defendant's employès after they discovered the peril, or if the injury would not have been inflicted but for their affirmative act in negligently increasing the speed of the train, knowing that thereby plaintiff's safety would be imperiled, as they must be holden to have known, the defendant company is liable notwithstanding the plaintiff's own original negligence. Thompson on Trial, § 1683; *Williams v. N. P. Railway Co.*, 11 Amer. & Eng. R. R. Cases, 421; *Railway Co. v. Stern*, 19 Amer. & Eng. R. R. Cases, 30; *Romick v. Railroad Co.*, 15 Amer. & Eng. R. R. Cases, 288; *Beenes v. Railroad Co.*, 10 Amer. & Eng. R. R. Cases, 658; *Kelly v. Railroad Co.*, 35 Amer. & Eng. R. R. Cases, 396; *Hays v. Railroad Co.*, 34 Amer. & Eng. R. R. Cases, 97; *Railroad Co. v. Burdye*, 18 Amer. & Eng. R. R. Cases, 192; *Frazer v. S. & N. R. R. Co.*, 81 Ala. 185.

Moreover, we are by no means prepared to say, that on the case as presented by the first count of the complaint, and supported by a tendency of the testimony, the plaintiff was guilty of contributory negligence at all. The test in this connection is not always found in the failure to exercise the best judgment, or use the wisest precautions; the influences which ordinarily govern human action are to be considered, and what would under some circumstances be a want of due care would not be such under others.—*Lent v. N. Y., C. & H. R. R. R. Co.*, 120 N. Y. 467. Indeed, we apprehend that it can in no case be said, as matter of law, to be negligence to get on or off a train moving at a rate of speed not in excess of two miles an hour ( *C. R. & B. Co. v. Miles*, 88 Ala. 256); and this wholly irrespective of any invitation or direction to alight or board emanating from employès, or deducible from circumstances.

In this case, however, it is alleged, and the averment is supported by the testimony offered for the plaintiff, that the conductor, while the train was in motion, and to all appearances would not come to a full stop at all, instructed or directed the plaintiff to get on the cars, by calling out to him "all aboard". The danger of an attempt to board not being obvious, as we have said, the law is well, and has been long settled, that the plaintiff was in no wise negligent, or lacking in due care, to rely upon the assurance thus impliedly given by the employè, that it was safe to make the attempt to board in compliance with the direction of the conductor.—2 Amer. & Eng. Encyc. of Law, 762; *Bucher v. N. Y. C. & H. R. R. R. Co.*, 98 N. Y. 128; *Railroad Co. v. Leopley*, 27 Amer. & Eng. R. R. Cases, 167; *Lent v. N. Y. C. & H. R. R. R. Co.*,120 N. Y. 467;

*Filer v. Railroad Co.,* 59 N. Y. 351; *B. & O. R. R. Co. v. Kane,* 69 Md. 11; s. c., 9 Amer. St. Rep. 387; *Bridges v. U. St. Railway Co.,* 12 Amer. St. Rep. 518; *Cincinnati Railway Co. v. Cooper,* 112 Ind. 26; *C. R. & B. Co. v. Miles,* 88 Ala. 256.

But, aside from all this, the situation created by defendant's servants, as averred, and as supported by the tendencies of the evidence, was in itself an invitation, to those waiting at that station for the train, to get aboard of it, and in the nature of an authoritative assurance that it was safe for them to do so. Confessedly the train ought to have stopped, was signalled to stop, recognized the signal, and slowed down to a speed of not exceeding two miles an hour in partial obedience to it. Confessedly also it did not stop, nor were any indications given of a purpose on the part of those in control of it to come to a full stop; but, on the contrary, a tendency of the evidence goes to show that no intention to fully stop was evinced, or even entertained; and to all appearances the only opportunity meant to be afforded plaintiff to get on was such as he might enjoy from the maintenance, while passing the station, of the low rate of speed to which the train had been reduced. That a situation, so to speak, or an aspect of affairs, may be produced by trainmen, which will as fully import an invitation or direction to action on the part of passengers as would oral instructions by employès, we do not doubt.—*Solomon v. Manhattan Railway Co.,* 103 N. Y. 437. That, if the jury found the facts stated above, and which are alleged in the complaint, to exist, they would have been authorized to find further that an invitation to plaintiff to board the train was involved in them, is equally clear. So finding, it follows, as a matter of course, the danger not being obvious, that plaintiff was not negligent in making the attempt to get on the slowly moving train.—Authorities *supra.*

Moreover, if the facts referred to were found by the jury, they involved and served to impose another important duty upon defendant's employès, with respect to the knowledge they must have that no passenger is in a position of danger before accelerating the movement of the train. Ordinarily the full duty of trainmen in that connection is performed, when the train is brought to a stand-still for a length of time which is reasonably sufficient to enable passengers to get on or off by the exercise of due care and diligence on their part; and when this is done, there is no duty resting on employès to see and know that passengers desiring to alight have done so, or that persons desiring to take passage are safely on board.—*Raben v. Railway Co.,* 35 N. W. Rep. 645; *Straus v. Railway Co.,*

75 Mo. 185; s. c., 86 Mo. 421; *Railway Co. v. Williams,* 8 S. W. Rep. 78; *Railroad Co. v. Peters,* 9 Atl. Rep. 317.

Where, however, a reasonable opportunity is not afforded by holding the train stationary for passengers to get on and off, but they are invited and expected to do so while the train is moving at a low rate of speed, a different rule ought to obtain, and in our opinion does obtain. An invitation thus conveyed implies, at least, an assurance that the momentum will not be increased until all persons desiring to come aboard have done so, and imposes a correlative duty on those in charge of the train not to increase the speed, without knowing that no person intending to act on the invitation is so situated as to be imperilled thereby. They can not, in other words, acquit themselves by merely maintaining the slow movement sufficiently long for persons with diligence to get on, for this itself is a wrong; and as there is no obligation on the would-be passenger to avail himself of such an invitation, though he may do so without negligence, they have no right to assume that he will avail himself of it immediately, or at all in fact; but they must know that it has been acted on, and that there is no one in an exposed position when the increased motion is imparted to the train. And even were it conceded that the plaintiff was negligent, notwithstanding the invitation or direction conveyed to him by the situation, because there was obvious danger in so acting, it was none the less the duty of the defendant's employès to see that the *status quo* was maintained while the effort was being made; and the company would be liable for the consequences of their failure to do so, notwithstanding the prior negligence of the plaintiff.

The evidence was conflicting, as to whether the train was suddenly started off "with a jerk" while plaintiff was in the act of stepping upon the cars. There was no conflict, however, as to the points, that the conductor saw the plaintiff when the attempt was made, and that he then signalled the engineer to go forward. The jury may have found that that signal was obeyed, and the train made thereby to lurch suddenly forward, causing the injury complained of. We are not prepared to say but that they might have legitimately reached the further conclusion, that the act of the conductor, done with a knowledge of plaintiff's position, was also done with a sense on the part of the conductor of the probable consequences of such sudden movement to the plaintiff, and unregardful of his safety. If so, this would be such gross negligence and recklessness on the part of the conductor, as would be the legal equivalent of that wantonness and intentional wrong-doing which affords a predicate for the imposition of

[Montgomery & Eufaula Railroad Co. v. Stewart.]

punitive or vindictive damages.—*A. G. S. R. R. Co. v. Arnold*, 80 Ala. 600; *A. G. S. R. R. Co. v. Hill*, 8 So. Rep. 90; *L. & N. R. R. Co. v. Watson*, at present term.

Under the principles we have declared, each count of the complaint presented a good cause of action, and the demurrers were properly overruled. Conceding that it appears from each count that plaintiff was guilty of contributory negligence, yet each presents a case upon which recovery might be had notwithstanding such contributory negligence. But the first count does not show contributory negligence at all. On the facts there alleged, the act of the plaintiff was not negligent.

A careful examination of the charge of the court, which is set out *in extenso*, leads us to the conclusion, that construed, as it must be, with reference to the evidence, it is free from error. It may be that some of its passages, which are separately excepted to and assigned as error, would be objectionable, standing alone, and dissociated from the parts which precede and follow them. But the doctrine is well settled in this court, that the general charge given *ex mero motu* in the court below should be read and construed with regard to the connection between its several sentences and propositions, each declaration being shaded and interpreted in the light of its context; and if any part, when so considered, limited or expanded, asserts the law correctly, it will not furnish ground for reversal, however faulty the clause might be, if its meaning were not controlled by prior or subsequent passages.— *Williams v. State*, 83 Ala. 68; *O'Donnell v. Rodiger*, 76 Ala. 222. Read in this way, every proposition asserted by the trial court, which is made the basis of an assignment here, is supported by one or another of the doctrines we have considered and declared above, which also serve to determine the exceptions reserved to the refusal of the court to give the instructions requested by the defendant, against the appellant.

The custom and usage of the defendant in respect to stopping its trains at Perry's Mill, and as to the signal to stop, the response to it indicating that it had been seen, &c., the precise point of stopping, length of time the train remained stationary ordinarily; and moreover, the knowledge of these things on the part of the plaintiff, as affecting the reasonableness of some of his acts, especially some of those alleged in the second count of the complaint, were matters involved in the issue presented and tried below. As relevant to these matters, and certainly to plaintiff's knowledge in respect to them, the fact that he had been in the habit of getting on and off trains at that point for fifteen years, we think was properly allowed to go to the jury.

The judgment of the Circuit Court is affirmed.