CLARE NELSON, Respondent, v. METROPOLITAN
STREET RAILWAY COMPANY, Appellant.

### Kansas City Court of Appeals, June 26, 1905.

1. **NEGLIGENCE: Pleading: Changing Cause of Action.** While a plaintiff cannot declare upon one cause of action and recover upon another, this rule is restricted to predicative facts without proof of which the cause of action cannot be established in its full scope and meaning and not to facts that may be eliminated without changing the cause of action.

2. ——: ——: **Alighting Passenger.** The negligence charged was starting the train with sufficient force to destroy plaintiff's equilibrium while she was exercising due care in the act of leaving the car. *Held*, the negligence of the gripman in the manner of moving the train is immaterial, since the starting of the car while passengers are alighting is negligence.

3. **STREET RAILROADS: Negligence: Alighting Passengers: Time of Stoppage.** Street railways are common carriers and must employ the highest degree of care toward their passengers and hold the car stationary while they are alighting.

4. ——: ——: ——: ——. While a steam railway in the country may start without observing every place of exit for passengers, a street railway may not start, however long the stop, until the conductor looks to his car before giving the signal.

5. ——: ——: ——: **Knowledge of Conductor.** Actual knowledge of the conductor in regard to the position of an alighting passenger is not necessary where he starts the car with the passenger in the act of alighting. Such start is tortious with or without knowledge of the conductor, and the carrier is liable if injury results without contributory negligence of the passenger.

6. ——: ——: ——: **Instruction.** An instruction is held not to authorize the jury to find for the plaintiff notwithstanding they might have believed she stood upon the platform and did not attempt to step therefrom until after the car started, but it required the jury to find that at the time of her alighting she was exercising ordinary care.

7. **DAMAGES: Permanent Injury: Instruction.** An instruction directing the jury to give fair compensation for pain of body and mind it may find and believe the plaintiff will suffer by reason of the injury, is held sufficient to restrain the jury from indulging in conjecture and to allow only for damage that was reasonably certain to result from the injury.

Appeal from Jackson Circuit Court.—*Hon. J. McD. Trimble*, Special Judge.

AFFIRMED.

*John H. Lucas* for appellant.

(1) The evidence wholly failed to sustain the allegations of the petition. (a) The knowledge of the peril of the plaintiff, on the part of the employees of the company. Spiro v. Transit Co., 102 Mo. App. 261; Hesselbach v. St. Louis, 179 Mo. 524; Breeden v. Mining Co., 103 Mo. App. 179; Worthington v. Railway, 72 Mo. App. 162. (b) The starting of the trains with a sudden and unusual jerk by the gripman in charge of the train. Bartley v. Railway, 148 Mo. 139, 140; Raming v. Railway, 157 Mo. 506. (2) The giving of instructions as asked by the plaintiff. Instruction numbered 1: (a) Unsupported by evidence. Wyatt v. Railway, 62 Mo. 408; Hanheide v. Transit Co., 104 Mo. App. 328; (b) Enlarges the issues. Fink v. Phelps, 30 Mo. App. 435; Waddingham v. Hulett, 92 Mo. 528; George v. Railway, 40 Mo. App. 447; Crews v. Lackland, 67 Mo. 621 and 622; Barr v. Kansas City, 105 Mo. 559. (c) Is misleading. Mateer v. Railway, 105 Mo. 353; Hewitt v. Steele, 118 Mo. 463; Mead v. Brotherton, 30 Mo. 201. Instruction numbered 2: (a) Ignores the issues tendered by the pleadings. (b) An unrestrained grant to render such judgment as in the opinion of the jury would be proper. Schant v. Railway, 106 Mo. 93; Hanes v. Stock Yards, 103 Mo. 60.

*Meservey, Pierce & German* for respondent.

(1) The trial court committed no error in submitting the case to the jury. Jackson v. Railway, 118 Mo. 199; Luckel v. Bldg. Co., 177 Mo. 631; Barth v. Railway, 142 Mo. 550; Dougherty v. Railroad, 81 Mo.

330; Cullar v. Railway, 84 Mo. App. 340; Duffy v. Transit Co., 104 Mo. App. 235; Grace v. Railroad, 156 Mo. 295; Fillingham v. Transit Co., 102 Mo. App. 573; Weber v. Railway, 100 Mo. 203; Railway v. Smith, 90 Ala. 60, 8 South. 86; Conway v. Railway, 46 La. Ann. 1430, 16 South. 362; Patterson v. Railway & Bridge Co., 90 Ia. 247, 57 N. W. 880; Anderson v. Railway, 12 Ind. App. 194, 38 N. E. 1109; Becker v. R. E. & B. Co., 174 Mo. 250, 251; Nellis on Street Railroad Accident Law (1904), page 91. (2) The trial court committed no, error in giving to the jury plaintiff's instruction numbered 1. Nellis on Street Railway Accident Law (1904), page 91; Jackson v. Railway, supra; Duffy v. Transit Co., supra. (3) The court did not err in instructing the jury on the measure of damages. Chilton v. St. Joseph, 143 Mo. 199; Young v. Webb City, 150 Mo. 333; Smiley v. Railway, 160 Mo. 629; Trust Co. v. Murmann, 90 Mo. App. 555; Hickey v. Welch, 91 Mo. App. 4; Batten v. Transit Co., 102 Mo. App. 285.

JOHNSON, J.—Plaintiff was a passenger upon one of defendant's cable trains operated upon the Ninth street line of its street railway system in Kansas City. She was injured while alighting from the car and sues to recover damages therefor, alleging that the negligence of defendant was the direct cause of her injury. The answer pleads a general denial and contributory negligence. Plaintiff recovered judgment in the sum of one thousand dollars and the case is here upon defendant's appeal. The error assigned all relate to the action of the trial court in refusing to sustain a demurrer to the evidence and in giving of instructions. First, it is said plaintiff failed to sustain by proof the cause of action pleaded in her petition. The petition charges:

"On the 21st day of March, 1903, plaintiff entered one of the cars of defendant company at or near the corner of Grand avenue and Ninth street in said Kansas City, Missouri, for the purpose of taking a trip west as

Nelson v. Railroad.

a passenger on one of defendant's cars; that plaintiff's destination was the corner of Ninth and Penn streets; and that upon the arrival of said car at the corner of Ninth and Penn streets aforesaid, the agents, servants and employees of defendant, in charge of said car, stopped the same for the purpose of permitting passengers to alight from said car, and this plaintiff immediately undertook to pass out of said car to the street below; that while plaintiff was in the act of stepping from the platform of said car, and before she had sufficient time to get safely off from the same, the agents, servants and employees of defendant managing its said railway, and in charge of said car, negligently and carelessly started said car forward with a sudden jerk and at a rapid rate of speed, causing said plaintiff to be thrown with great force and violence off of said car and upon the street below. . . .

"That said injuries were directly caused by the carelessness and negligence of the agents, servants and employees of said car in starting it forward with a sudden jerk while plaintiff was in the act of alighting therefrom; that at the time when said plaintiff started out of said car, other passengers were preceding her, and by the exercise of ordinary care, the agents, servants and employees of defendant might have known that plaintiff was in a place of danger at the time when said car was started, and plaintiff charges that said defendant actually knew that plaintiff was in a dangerous position at the time when said car was started."

Under the facts disclosed by the evidence, it appears that plaintiff boarded a west-bound train at Grand avenue, her destination being Penn street. The train consisted of a "grip" car and coach. Plaintiff seated herself in the coach near the middle thereof and paid her fare to the conductor. Before reaching Penn street an additional gripcar was attached to the front end of the train to assist it up hill and down a

113 app—45

steep incline on the other side thereof to the Union station, the terminus of the line. Penn street was on the summit of the hill and all west bound trains were required to stop there for the purpose of receiving and discharging passengers, and to exchange signals with a station at the foot of the incline before proceeding. A telephone line was the medium of communication and the instrument at the east end thereof was located on the northwest corner of the intersection of the streets near the curb line of the sidewalk. It was the duty of the gripman to stop the train at this place and not to proceed until signalled by the conductor, whose duty it was to go to the box, ring up the other end of the line and wait until he obtained the proper signal. On arriving at Penn street the train upon which plaintiff was a passenger came to a full stop at its customary place and plaintiff proceeded to alight from the rear end thereof, the proper place. She was preceded by two other passengers. To this point the facts are undisputed.

Plaintiff and her witnesses say that she arose from her seat as the car was slowing, remained standing until it came to a full stop and then walked behind the other two disembarking passengers to the rear platform, and from there was in the act of putting her foot upon the first step when the train suddenly started without warning and threw her violently to the street; that her progress from the time the car stopped was continuous and as expeditious as possible. She was carrying some bundles which prevented her from using the railings and other holds provided. Further, her witnesses say the conductor jumped from the train as it was stopping, went to the signal box, received his signal to go ahead, and without looking to the rear end of the train raised his hand, called "all right" and ran to and boarded the train which started immediately without warning when he gave the signal.

The facts alleged, which it is claimed by defendant are unsustained by any evidence, are, that the conductor

had actual knowledge of plaintiff's position when he signalled the gripman to start, and negligence in the manner in which the train was set in motion by the gripman. There is substantial evidence in the record that the train started with an extraordinary jerk; and while it must be conceded that plaintiff's witnesses all say that the conductor did not look in the direction of plaintiff, and consequently had no knowledge of her situation, the conductor, himself, said: "After getting the signal from the depot I went toward the car, boarded the front platform of the coach, looked to see if everything was clear; then gave the gripman two bells to go ahead; as the train started off and had gone perhaps six or eight feet a woman stepped off the rear platform and fell." From this statement it appears the conductor must have seen plaintiff; but as the instructions given on her behalf are criticized for failing to require the jury to find these facts, we will consider the questions of law arising from defendant's hypothesis that neither of them is supported by proof.

A plaintiff will not be permitted to declare upon one cause of action and recover upon another. When acts of negligence, fundamental to the right asserted, are specifically alleged, they must be proven as alleged. [Waldhier v. Railroad, 71 Mo. 514; Ely v. Railroad, 77 Mo. 34; McManamee v. Railway, 135 Mo. 440.] But this well settled rule is in its application restricted by statute to predicative facts without proof of which the cause of action pleaded cannot be established in its full scope and meaning, and not to facts that, particularizing only, may be eliminated without changing the cause of action. [R. S. 1899, sections 655-798; Waldhier v. Railroad, supra; Leslie v. Railroad, 88 Mo. 50; Ridenhour v. Railroad, 102 Mo. 270.]

Whether or not the facts under consideration are substantive is therefore the question for determination. A fair and reasonable construction of the petition leads to the conclusion that the act of negligence charged was

the starting of the train with sufficient force to destroy plaintiff's equilibrium while she, exercising 'due care, was in the act of leaving the car. The negligence of the gripmen, if any, in the manner of moving the train was immaterial. It was negligent for defendant to make any kind of a start while passengers were leaving the train at a place provided for their discharge. The manner of starting the car, its rate of speed and jerking motion are but nonessential particulars.

Defendant says that even under the evidence of plaintiff she was given ample time to leave the car; that defendant is required to stop for the discharge of passengers a reasonable time, after the lapse of which the conductor is not bound to look to the places of exit for departing passengers, but may assume that they have safely alighted. Street railways are common carriers and as such must employ the highest degree of care to avoid injury to their passengers. [Hite v. Railway, 130 Mo. 132; Jackson v. Railway, 118 Mo. 199; Barth v. Railway, 142 Mo. 535; Fillingham v. Transit Co. 102 Mo. App. 573.] The relation of carrier and passenger continues to the time the latter alights from the train. It was not only the duty of defendant to safely carry plaintiff, but when her destination was reached and the car stopped, to hold it stationary while she was alighting. [Leslie v. Railroad, supra; Grace v. Railway, 156 Mo. 295; Dougherty v. Railroad, 81 Mo. 330; Weber v. Railway, 100 Mo. 194; Becker v. Bldg. Co., 174 Mo. 246; Cullar v. Railway, 84 Mo. App. 340.]

The characterization of the acts of carriers in the handling of their traffic often depends upon the circumstances and conditions under which an act in question is done. It has been held that the conductor of a train upon a steam railroad running across the country may, in the exercise of proper care, signal the engineer to start the train after it has stopped at a station a reasonable time for passengers to leave without looking at all of the places of exit to see if any one is in the act of alight-

ing. [Straus v. Railroad, 75 Mo. 185.] But the authorities agree that similar conduct on the part of the conductor of a street car is negligence. The conductors in both instances are required to use the highest degree of care, but the street car conductor has no means of knowing how many passengers intend to alight at a given place, and therefore cannot judge in advance of the length of stop required. Regard also must be had for the habits of people patronizing such urban vehicles who frequently make impulsive exits therefrom for divers reasons. However long a stop may be, due care requires the conductor to look to his car before giving the signal to start. [Railway Co. v. Smith, 90 Ala. 60; Anderson v. Railway, 12 Ind. App. 194; Patterson v. Railway, 90 Iowa 247; Nellis' Street Railroad Accident Law, 92; Booth on Street Railways, section 349.]

As before stated, the gravamen of the charge is the starting of the car with plaintiff in the situation described. Actual knowledge on the part of the conductor of her position is beside the real issue. His act in starting the train was tortious, either with or without such knowledge if it, without fault of her's contributing, produced her fall. [Ridenhour v. Railway, 102 Mo. supra; Duffy v. Transit Co., 104 Mo. App. 235.] Under these conclusions it follows that a failure of proof with respect to either of these facts and the omission to refer to them in the instructions as essential to a recovery do not constitute substantial error.

Plaintiff's first instruction was in part as follows: . . . and that said train upon which plaintiff was a passenger stopped on or near the crossing on Penn and said Ninth streets for the purpose of permitting passengers to alight therefrom, and that while said train was standing on or near said crossing plaintiff took a position upon the back platform of the rear car of said train for the purpose of stepping off said car, and that while plaintiff was in that position, and before she had sufficient time to get safely off said car, the agents, servants

and employees in charge of said train suddenly caused the said car to be started forward," etc. A fair interpretation of this language does not admit of the conclusion that the jury was authorized to find for plaintiff, notwithstanding they might have believed that plaintiff stood upon the platform and did not attempt to step therefrom until after the car had started. If such construction is not admissible there is no substantial difference between the cause of action pleaded and proven and that submitted.

No claim is made by any witness that plaintiff stopped upon the platform. Plaintiff's witnesses said that the car started when she was in the act of stepping therefrom; and those for defendant testified that she attempted to step off after the car started. There is no controversy over the fact that when the car started she was in the act of leaving it. The instruction under consideration required the jury to believe, in order to find for plaintiff, that, "at the time she attempted to alight from said car she was exercising ordinary care for her own safety in doing so under the circumstances shown in evidence." And defendant's fourth instruction told the jury that, "although you may find and believe from the evidence that defendant's agents and servants were negligent in starting the car before plaintiff had safely alighted from said car, yet if you further find and believe from the evidence that plaintiff voluntarily stepped off of said car after it had started, and by reason thereof fell and was injured, your verdict will be for the defendant." Thus, it appears that the only act of negligence asserted against plaintiff was that of attempting to alight after the car started. Of course, if plaintiff was not overthrown by the unexpected starting of the car, but endeavored thereafter to step from the platform while the train was in motion and sustained the fall in consequence thereof, such negligent conduct would preclude her recovery. But there is no room for the contention that the instruction under consideration permitted

a verdict for plaintiff, even in the face of such contributory negligence. The issue was fairly presented in the instructions of both parties and the jury was unequivocally directed to find for defendant if they believed that plaintiff was negligent in the manner claimed.

Plaintiff's second instruction directed the jury to include within the recoverable damages "fair compensation to her for any pain of body or mind which you may find and believe from the evidence she has suffered and *will suffer* by reason of the injury." etc. These words are essentially different in meaning from those used in the instruction condemned in the case of Ballard v. Kansas City, 86 S. W. 479, 110 Mo. App. 391, cited by defendant. There compensation was to be awarded, "for any pain of body and mental anguish that plaintiff *may suffer* in the future." The use of the words, "may find and believe," followed by the restrictive words, "will suffer," plainly confined the inquiry to such pain as the jury believed was reasonably certain to result from the injury, and did not permit indulgence in conjecture or speculation relative to possible or contingent future happenings.

No substantial error appearing in the record, the judgment is affirmed. All concur.