## ANNA B. MILLER, Respondent, v. METROPOLITAN STREET RAILWAY COMPANY, Appellant.

### Kansas City Court of Appeals, May 20, 1907.

1. **PASSENGER CARRIERS: Negligence:. Evidence: Instruction.**
Plaintiff's evidence tended to show that the street car did not stop a sufficient time for her to get on the running step of the motor car. The defendant's evidence tended to show that it did not stop at all. An instruction told the jury if the car started suddenly and violently without allowing the plaintiff a reasonable time to get upon the car and become seated . . . whereby she was thrown, etc., then the finding should be for the plaintiff. *Held*, properly given, since on the evidence it was entirely immaterial what the duties of the defendant might be to a passenger who is compelled to stand in a crowded car.

2. ———: **Wrong Side: Instruction: Duty of Conductor.** Where a car stops for the reception and discharge of passengers it is the duty of the conductor before signaling for the car to start to look to all places provided for the use of passengers in entering and leaving the cars to see that none are in the position of danger; and a motor car which may be entered from either side has no "wrong side" to which the conductor should not look, and one attempting to enter the car from either side is entitled to the same care. An instruction held properly refused.

Appeal from Jackson Circuit Court.—*Hon. William B. Teasdale,* Judge.

AFFIRMED.

*John H. Lucas* and *Ben F. White* for appellant.

(1) The court erred in giving instruction numbered one at the request of plaintiff. It placed a greater burden on defendant than the law imposes, in that it declared the law to be that the car should not have been started until plaintiff had become seated. Dougherty v. Railroad, 9 Mo. App. 485; Dougherty v. Railroad, 81 Mo. 325; Maggioli v. Transit Co., 10 Mo. App. 421; Yarnell 113 Mo. 576. (2) The court erred in refusing defend-

ant's instruction numbered two. If the crew in charge of the car did not see plaintiff in a position of peril, or by the exercise of ordinary care could not have seen her, defendant is not liable, especially when plaintiff was boarding the car from the wrong side.

*Scarritt, Scarritt & Jones* for respondent.

(1) Appellant's first contention is that the court erred in requiring the jury to find by plaintiff's first instruction that defendant's servants "started said car suddenly and violently without allowing plaintiff a reasonable time to get upon said car and become seated thereon." This instruction is not subject to the criticism attempted to be lodged against it. (2) The court committed no error in overruling defendant's refused instruction 2. Parker v. Railway, 69 Mo. App. 59; Sweeney v. Railway, 150 Mo. 385; Powers v. Railway, 60 Mo. App. 481; Barth v. Railway, 142 Mo. 535; O'Mara v. Transit Co., 102 Mo. App. 202; Albin v. Railway, 103 Mo. App. 308.

JOHNSON, J.—Plaintiff sues to recover damages for personal injuries which she charges were caused by the negligence of defendant. She had judgment in the sum of one thousand dollars, and defendant appealed.

From the evidence introduced by plaintiff, it appears that on the morning of July 14, 1902, she attempted to become a passenger on a west-bound cable train operated by defendant on the Eighth street line of its street railway system in Kansas City. The line consisted of two tracks, that on the north being used by west-bound and the one on the south for east-bound trains. The train, which consisted of a gripcar and a trailer, stopped at the intersection of Eighth and Harrison streets, a regular stopping place for the reception and discharge of passengers. Two persons boarded the gripcar on the north side thereof and plaintiff, who had just arrived from the south, crossed the track for east-bound cars

and attempted to board the gripcar on the south side. This was an open car with seats on each side of a central enclosure which was occupied by the gripman and the appliances used by him in the operation of the train. The seats were short and were placed on cross section lines. A footboard was provided along each side of the car and passengers in reaching or leaving seats use it as a step. The train remained stationary until plaintiff had placed one foot on the footboard and was in the act of raising the other foot from the pavement when it suddenly started and threw her to the ground, inflicting the injuries of which she complains.

On behalf of defendant, the evidence tends to show that the train did not stop at this crossing at all, owing to the fact that another west-bound train was just behind it, and that beyond the fact that she signalled the gripman to stop, plaintiff made no effort to get aboard, but fell to the ground on account of spraining her ankle in some manner.

The first objection made by defendant is directed against the first instruction given by the court on behalf of plaintiff. This instruction assumed to cover the whole case, and in the hypothesis on which a verdict was directed for plaintiff, was submitted the fact as to whether defendant started the car "suddenly and violently without allowing plaintiff a reasonable time to get upon said car and become seated thereon . . whereby plaintiff was thrown from said car." Point is made that it was error thus to charge the jury as a matter of law that it was the duty of defendant to hold the car stationary until plaintiff had been given a reasonable time in which to seat herself.

The operators of a street car, in the proper discharge of their duty to a person who boards it for the purpose of becoming a passenger, should either hold it at rest until the passenger has been given a reasonable time in which to seat himself, or, if there is no vacant seat, to

reach a place where he may support himself while standing, or, if they start the car before the passenger has reached a place of safety, the start should be made gradually to avoid the danger of throwing him down. To make a sudden start of sufficient violence to injure a passenger who is proceeding with reasonable care to reach a place of security is presumptively negligent, and the presumption becomes conclusive unless the carrier shows facts which make it appear that the manner of making the start was unavoidable in the exercise of the highest degree of care. This is a rule announced in Dougherty v. Railroad, 9 Mo. App. 478, and adopted by the supreme court in the opinion filed in the same case (81 Mo. 325). The instruction required the finding that the start was made with enough violence to throw plaintiff from the car, and if the jury believed that to be the fact, plaintiff was entitled to recover as a matter of law, provided the other facts elemental to the cause of action were found in favor of plaintiff. The duty of defendant was correctly defined. The argument that the rule as stated in the instruction would require the carrier in all cases to hold the car until the passenger could be seated, even when the car was crowded and there were no vacant seats, is unsound under the facts before us. There is no room for the inference that plaintiff could not have seated herself had she been given a proper opportunity, and the jury could not have been mislead into believing they might be dealing with the situation of an overcrowded car. Moreover, the petition charges, and the evidence of plaintiff tends to show no other state of facts than that plaintiff was thrown by a sudden and violent start made when she was in the act of stepping from the pavement to the footboard, while the evidence of defendant is to the effect that the car went by the crossing without stopping and plaintiff made no attempt to board it, and the jury was told in instructions asked

125 App—27

by each party that a recovery could be had on no other ground than that plaintiff was thrown from the footboard before she had been given time to secure her footing upon it. In such state of proof, it was entirely immaterial what the duty of defendant might be to a passenger who is compelled to stand in a crowded car. The instruction sufficiently dealt with the particular facts disclosed by the evidence, and it was not at all necessary that the rules it applied should be so stated as to properly fit a supposititious situation that was not presented by the pleadings and could not be reasonably inferred from any facts in evidence.

Defendant further complains of the refusal of the following instruction which it asked the court to give: "Even though you may believe that the car stopped and that the plaintiff took passage thereon and that while thereon she was thrown therefrom and injured, this is not sufficient to authorize you to find a verdict for the plaintiff. Before plaintiff can recover, you must be satisfied from the evidence that the conductor and gripman in charge of the car saw the plaintiff on the footboard of the car, or by the exercise of ordinary diligence could have seen her on the footboard thereof, and notwithstanding such fact they negligently and carelessly without notice or warning to the plaintiff, suddenly and abruptly started the car with such force and violence as to throw the plaintiff therefrom and to cause the injury complained of in her petition. Unless you so believe, you will find the issues joined for the defendant."

It is contended that, as plaintiff approached the car from the wrong side, the train men could not be held, as a matter of law, to the duty of looking in an unexpected quarter for oncoming passengers. This train had stopped at a regular station for the reception and discharge of passengers, and it was the duty of the conductor, before giving the signal to start, to look to all the places provided for the use of passengers in entering and leav-

.ing the cars, to see that none was in a position to be injured should the train be started. There was no wrong side to this car. The seats on the south side thereof hardly could be reached except by using the footboard on that side and, knowing that fact, it was the duty of the conductor to look to the south as well as to the north side before giving the starting signal. He had no right to assume from the fact that the train had been stopped a time reasonably sufficient to transact the business at that point that no one would be endangered by starting it. It was his business to inform himself of the movements of passengers before giving the signal. [Nelson v. Railway, 113 Mo. App. 702.] The instruction was properly refused.

Judgment is affirmed. All concur.

