MARY A. ZEILER, Respondent v. METROPOLITAN STREET RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, February 13, 1911.

1. **CARRIER OF PASSENGERS: Appellate Practice: Evidence.** In an action by a passenger against a common carrier to recover damages for personal injuries caused by the negligence of the carrier in suddenly starting the car while the passenger was alighting therefrom, the appellate court will not disregard the testimony of three witnesses that the car did start while plaintiff was alighting, ran from two to four feet, and then stopped, on the ground, as contended by appellant, that this testimony can not be reconciled with the physical facts of the case, and that therefore defendant's request for a peremptory instruction should have been granted.

2. ———: **Jury Question.** The question whether it was physically impossible for the car to have been started by the motorman with enough violence to cause plaintiff to lose her balance, and yet for the car to have been stopped in two or three feet, was for the jury, and the court did not err in overruling defendant's demurrer to the evidence.

3. ———: **Instructions.** It was not error for the plaintiff's instruction to inform the jury of the nature of the legal relations between carrier and passenger, i. e., that it was the duty of the

operators of the car not to start it, until plaintiff had stepped in safety to the pavement, when such information was pertinent to one of the contested issues of fact in the case.

4. ———: ———: Where the gravamen of the action was the negligence of defendant's servants in allowing a car under their control to start prematurely, an objection is hypercritical on the ground that the instructions broadened the scope of the cause pleaded in authorizing a verdict on finding that defendant "caused *or* permitted said car to be moved," while the petition alleged that defendant "caused *and* permitted."

Appeal from Jackson Circuit Court.—*Hon James H. Slover,* Judge.

AFFIRMED CONDITIONALLY.

*John H. Lucas* for appellant.

*Scarritt, Scarritt & Jones* for respondent.

JOHNSON, J.—This is an action by a passenger against a common carrier to recover damages for personal injuries caused by the negligence of the carrier in suddenly starting the car in which the passenger was riding, while she was alighting therefrom. A trial to a jury resulted in a verdict and judgment for plaintiff for five thousand dollars and the cause is before us on the appeal of defendant.

The injury occurred June 8, 1908, on Main street in Kansas City at either Eighteenth or Nineteenth streets. The evidence of plaintiff does not fix the place with certainty while that of defendant shows that the car was at Eighteenth street at a regular stopping place for the reception and discharge of passengers. The car was north-bound and stopped to let off passengers, among them plaintiff and her two companions who desired to transfer to a car on another line of defendant. The conductor watched the three women leave the car and states that it was stationary the whole time; that he gave no signal to start while they were alighting, that

the car did not start and that plaintiff in stepping off accidently tripped or stumbled and pitched forward to the pavement. His statement is supported by the testi-mony of numerous witnesses.

On the other hand, the testimony of plaintiff and her witnesses tends to prove the following facts: When plaintiff, who was sixty years old and weighed 270 pounds, and her two companions started to leave the car it had stopped in response to their signal and re-mained stationary until plaintiff was going down the steps at the entrance to the rear vestibule, when it gave a violent lurch forward and threw her to the pavement, face downward. She screamed as she fell and the car stopped after running not more than three or four feet. Plaintiff was preceded by one of her companions and followed by the other. The one in front alighted in safety and started to the sidewalk when she was arrested by plaintiff's outcry. She did not see the car move but observed plaintiff lying prone some dis-tance rearward of the car. The woman following plain-tiff testified:

"Q. What was the car doing at that time? A. When we got off the car had stopped and Mrs. Fitch got off and went on across the street, and Mrs. Zeiler got off to get down on the first step—in the vestibule, you know, and the car gave an awful lurch—

"Q. And what happened to Mrs. Zeiler? A. It threw her off.

"Q. In which direction from the car? A. It threw her south at the back end of the car.

"Q. The car was going north? A. The car was going north.

"Q. Where were you at that time? A. I was standing in the door, and I should have fallen if I hadn't been holding on to the side of the door, the car gave such a lurch.

"Q. After Mrs. Zeiler was thrown, as you describe, what did you do? A. I got off as quick as I could.

"Q. Did the car stop again? A. The car stopped before I got off, when it gave this lurch.

"Q. Where was Mrs. Zeiler then? A. She was lying at the south end of the car.

"Q. Just tell the jury where she was in reference to the car? A. Well, she was lying out from the car at the back of the car, and I suppose three or four feet from the car, because I got off and went around her— and she fell face foremost—just spreading right out."

. Another of plaintiff's witnesses—a passenger on the car—testified:

"Well the car stopped—the car was very crowded —the rear portion of it, to the rear platform was crowded, and they were standing around even into the doorway. These ladies started to get off, and as I thought, they had gotten off, because there was so much of a crowd I couldn't see the steps at all. I was sitting up on this side, on a seat nearer to the front door, and a signal was given to go ahead—in other words, two bells—and the car started, and I heard a scream. I made for the front door and I stepped down on the step— there were three steps to this car, and the car was just stopping—I went around the front end and found Mrs. Zeiler, the lady in question, lying behind the car.

"Q. How far back of the car, when you got back there, did you find her lying? A. Oh, two or three feet.

"Q. Was that car moving at the time you got up and rushed out? A. Yes sir.

"Q. And it started up just before this scream occurred? A. Yes, sir."

He further stated that after suddenly starting, the car moved four or five feet.

Plaintiff states that as she started down the steps she grasped the handhold at the rear of the vestibule with her right hand and held on until the force of her fall caused her to let go.

The petition alleges "but defendant, disregarding its duty to plaintiff as its passenger, by and through its servants and agents upon and in charge of and managing its said car, carelessly failed and neglected to cause said car to remain stopped a reasonably sufficient length of time for plaintiff to alight therefrom in safety, but carelessly and negligently permitted and caused said car to be moved and started forward suddenly and with a jerk, while plaintiff as such passenger was in the act of alighting from said car, and without any warning thereof to plaintiff, and when defendant's servants and agents upon and in charge of and managing said car saw, or by the exercise of ordinary care might have seen, the situation of the plaintiff while in the act of alighting from said car, in time by the exercise of due care to have so managed said car as to have avoided any injury to plaintiff."

At the request of plaintiff the court gave the following instructions:

"The court instructs the jury that defendant and its employees in charge of the car on which plaintiff was a passenger, at the time in question, owed plaintiff the duty to operate said car, at the time and place in question, with the highest practical degree of care that a very prudent person engaged in a like business would exercise under the same or similar circumstances to those disclosed by the evidence in this case.

"The court instructs the jury that if you believe from the evidence the defendant on or about June 8, 1908, was conducting and operating a street railroad and cars thereon in Kansas City, Missouri, on which it carried passengers for hire, and that on or about said date, plaintiff became a passenger upon one of defendant's cars, the motive power of which was electricity, and paid her fare to be carried as a passenger thereon, and that when said car upon which she was a passenger as aforesaid arrived at Main street at a usual stopping place for letting passengers off at or near

Eighteenth street or Nineteenth street, in Kansas City, Missouri, it was stopped for the purpose of letting pas-sengers off said car, and that upon the stopping of said car as aforesaid plaintiff proceeded to alight therefrom, and that while she was in the act of so alighting the defendant, acting by and through its servants and agents in charge of said car, carelessly and negligently, and without allowing plaintiff a reasonable time to get off said car, caused or permitted said car to be moved and started forward suddenly and with a jerk, whereby plaintiff was thrown from said car to the street pave-ment and her leg, knee and body thereby injured, then your verdict should be for the plaintiff.''

Counsel for defendant insist that their request for a peremptory instruction should have been granted. They argue that the record is barren of any substantial evidence in support of the averment that the car sud-denly started.    Three witnesses say it did start while plaintiff was alighting, ran from two to four feet and then stopped, but we are asked to disregard this testi-mony on the ground that it cannot be reconciled with the plain physical facts of the case.    We perceive noth-ing improbable in the evidence.    The nature and direc-tion of plaintiff's fall as described by her witnesses indi-cate that while she was alighting in the awkward manner characteristic of women, i. e., stepping straight out and using her right hand for support, instead of facing towards the front and grasping the handle with her left hand, her feet were jerked forward by a sudden lurch of the car and her body was pitched towards the opposite direction.    Doubtless the nature and duration of her grip on the handhold had some influence on the direction of her fall.    We think under all the facts and circumstances disclosed the inference is reasonable that she was thrown by a sudden forward movement of the car.

Counsel contend that had the car been started by the motorman with enough violence to cause plaintiff

to lose her balance it could not have been stopped in two or three feet. We regard this as an argument exclusively for the consideration of the triers of fact. We shall not declare as a matter of law that the movement in question was physically impossible. The conclusion is reasonable that the motorman, at the instant he turned on the power realized he was acting prematurely and immediately reversed the lever and stopped the car. Such spasmodic starts and stops of electric street cars occur often enough to be of common knowledge to patrons of such conveyances. The question of whether the injury occurred in the manner alleged or in the way claimed by defendant was an issue of fact for the jury. The court did not err in overruling the demurrer to the evidence.

Objections are urged against the instructions given at the request of plaintiff, but we find them free from prejudicial error. Street railway companies, being common carriers, owe their passengers the duty of exercising the highest degree of care to carry them in safety. This duty continues while the passenger, himself in the exercise of reasonable care, is alighting at a place where the car is stopped for the purpose of permitting him to alight. It was the duty of the operators of the car not to start it until plaintiff had stepped in safety to the pavement. [Nelson v. Railroad, 113 Mo. App. 702.] It was not error for the instruction to inform the jury of the nature of the legal relation between carrier and passenger when such information was pertinent to one of the contested issues of fact in the case.

We consider hypercritical the objection that the instructions broadened the scope of the cause pleaded in authorizing a verdict on the finding that defendant "caused or permitted said car to be moved and started forward," etc., while the petition alleges that defendant "caused and permitted," etc. The gravamen of the action was the negligence of defendant's servants in allowing a car under their control to start prematurely

when, had they exercised proper care, it would not have started. The jury, to find for plaintiff, were required to believe that the car started through the negligent agency of the motorman or conductor and the aver- ment is comprehensive enough to include any act of that nature.

Finally, defendant contends that the verdict was excessive. The injury to plaintiff was severe, excruciatingly painful, and resulted in permanent injury to her left leg that will partially cripple her for life. We think five thousand dollars for a permanently and completely crippled leg is not unreasonable, but we are satisfied the verdict is excessive since plaintiff is not completely crippled.

If, within ten days plaintiff will enter a remittitur of one thousand dollars, the judgment will be affirmed without cost. Otherwise it will be reversed and the cause remanded. All concur.