SOPHIA THOMURE, Respondent, v. ST. LOUIS & SAN FRANCISCO RAILROAD COMPANY, Appellant.

**St. Louis Court of Appeals.    Submitted on Briefs May 6, 1915. Opinion Filed June 8, 1915.**

1. **CARRIERS OF PASSENGERS: Injury to Passenger: Premature Start of Railroad Train: Sufficiency of Evidence.** In an action by a passenger for injuries sustained by reason of the premature starting of a railroad train while she was in the act of alighting from it, *held,* under the evidence, that the case was for the jury.

2. **INSTRUCTIONS: Necessity of Being Supported by Evidence.** It is error to submit issues to the jury when there is no evidence to support them.

3. **CARRIERS OF PASSENGERS: Injury to Passenger: Premature Start of Railroad Train: Evidence: Inferences.** In an action by a passenger for injuries sustained by reason of the premature starting of a railroad train while she was in the act of alighting from it, plaintiff's testimony, that the starting of the train caused her to lose her balance and fall from the step, was sufficient to warrant an inference that the train was caused to start and move forward suddenly.

4. ————: ————: ————: Right of Recovery. Where the conductor of a railroad train, having reason to believe that a passenger who has reached his destination has not alighted, and, though dilatory, may be in the act of alighting, starts the train without examination or inquiry, and the passenger is in the act of alighting when the train is started, and is thereby injured, the railroad company is liable.

5. ————: ————: ————: Instructions: Submission of Immaterial Issues. In an action by a passenger for injuries sustained by reason of the premature starting of a railroad train while she was in the act of alighting from it, *held* that the real point to be determined was whether plaintiff had been

allowed a reasonable time in which to alight from the train, and as that was submitted to the jury and they found for plaintiff, whether or not other averments in her petition, or even included in the instructions, were supported by substantial evidence, was immaterial.

6. ———: ———: ———: **Instructions.** In an action by a passenger for injuries sustained by reason of the premature starting of a railroad train while she was in the act of alighting from it, the court instructed, at the instance of plaintiff, that if the jury believed from the evidence that plaintiff was a passenger on defendant's train, having paid her fare, "then in that event it was the duty of defendant to exercise the highest practical care to carry plaintiff safely to her destination, and it was the duty of defendant's agents and servants to stop the train at plaintiff's destination a reasonable time to allow plaintiff, by the exercise of ordinary care, to alight from said train in safety before it started; and in ascertaining what would be a reasonable time, the jury should consider plaintiff's age, sex, physical condition and all the facts and circumstances bearing upon the question; and if defendant's agents and servants started said train while plaintiff was proceeding, in the exercise of ordinary care, to alight from said train, and before she had a reasonable time to alight therefrom in safety, then such starting of said train was an act of negligence on the part of defendant and a breach of its duty to plaintiff as a passenger on its road." *Held*, that the instruction properly covered the case.

7. ———: ———: ———: **Instructions.** In an action by a passenger for injuries sustained by reason of the premature starting of a railroad train while she was in the act of alighting from it, the petition alleged that, before the train had stopped for a reasonable and sufficient length of time to allow plaintiff, using due diligence, to alight therefrom in safety, and while plaintiff was in the act of alighting therefrom, defendant, by or through its agents, negligently caused the train to be started forward with a sudden jerk, without any warning, thereby causing plaintiff to be thrown to the ground. *Held*, that an instruction requested by defendant, to the effect that if the jury found that the train stopped a reasonable length of time for plaintiff to alight, and that the train was started while she was in the act of alighting therefrom, and started and moved slowly, and did not start with a sudden jerk and bound, and she was caused to fall by reason of the starting, the verdict should be for defendant, was properly refused, since its effect would have been to narrow the issue to the fact of a start with "a sudden jerk and bound," and to eliminate the real issue, namely, whether or not the train was started before a reasonable time

had been allowed plaintiff to alight—the manner in which the train was started, whether with a jerk or otherwise, being immaterial.

8. ———: ———: ———: Evidence: Admission: Harmless Error. In an action by a passenger for injuries sustained by reason of the premature starting of a railroad train while she was in the act of alighting from it, the admission of evidence that there was no step-box at the steps when plaintiff attempted to alight, was not reversible error, where defendant's own testimony showed that the box had been removed before plaintiff attempted to alight and no instructions basing liability on the absence of the box were given.

9. APPELLATE PRACTICE: Admission of Evidence: Harmless Error. The admission of evidence concerning facts that cannot be made the predicate of liability is not prejudicial error, where the adverse party establishes the same facts and the jury are not charged that they may base a verdict thereon.

10. EVIDENCE: Statement Prepared by Witness: Admissibility. A written statement, prepared by defendant's claim agent, setting forth plaintiff's version of the matter in controversy, as detailed by her to the claim agent, but which was not signed by her, was properly excluded from evidence; the claim agent having testified concerning what plaintiff told him.

11. DAMAGES: Personal Injury: Punitive Damages. In an action for personal injuries negligently inflicted, the law will confine the recovery to compensatory damages, and will not allow those that are punitive in their nature.

12. ———: ———: Excessiveness of Recovery. Plaintiff, a woman fifty years of age, had both bones of one of her legs broken below the knee. The evidence tended to show that, although the injury would not be permanent, it would trouble her for a long time and that she would not be able to walk without crutches for a long time. Held, that a verdict for $3000 was not excessive.

Appeal from Jefferson Circuit Court.—*Hon. E. M. Dearing*, Judge.

AFFIRMED.

W. J. Orr, Moses Whybark and A. P. Stewart for appellant; W. F. Evans of counsel.

(1) The court erred in overruling the demurrer to the evidence at the close of plaintiff's case, and in

refusing the peremptory instruction requested by defendant at the close of the whole case. The petition charged specific acts of negligence, and plaintiff therefore cannot invoke the doctrine *res ipsa loquitur.* McGrath v. Trans. Co., 197 Mo. 105; Orcutt v. Bldg. Co., 201 Mo. 442, 444; Roscoe v. Railroad, 202 Mo. 576; Beave v. Trans. Co., 212 Mo. 331; Evans v. Railroad, 222 Mo. 435; Hamilton v. Railroad, 114 Mo. App. 508; Gibler v. Railroad, 148 Mo. App. 475. (2) Instruction number 3 given for plaintiff is erroneous because there was no evidence that the train was caused to start and move suddenly forward. It is error to submit to the jury issues which have no evidence to support them. Kimble v. Railroad, 108 Mo. App. 78; Groneweg v. Estes, 144 Mo. 427; Smith v. Bank, 147 Mo. App. 462; Heinzle v. Railroad, 182 Mo. 528; Black v. Railroad, 217 Mo. 685; Degonia v. Railroad, 224 Mo. 589. (3) Instruction number 3 requested by defendant should have been given. (4) The court erred in admitting testimony that no step box was placed at the steps where plaintiff was attempting to alight from the train. There was no duty resting on defendant to furnish plaintiff a portable step. Young v. Railroad, 93 Mo. App. 267. (5) The court erred in excluding the statement made by plaintiff to defendant's claim agent. This statement was competent to contradict plaintiff, and its weight was for the jury. Kirkwood, etc., Assn. v. Van Ness, 61 Mo. App. 364; Erwin v. Railroad, 94 Mo. App. 297. (6) The verdict is excessive.

*Clyde Williams* and *R. A. Frazier* for respondent.

(1) Defendant did not stop its train a reasonable and sufficient length of time to enable plaintiff using due diligence to alight therefrom. Gress v. Railroad, 109 Mo. App. 716; Kirby v. Railroad, 146 Mo. App. 304; Hurt v. Railroad, 94 Mo. 255; Hickman v. Rail-

road, 91 Mo. 436. (2) Defendant's agents and servants caused its train to start while plaintiff was in the act of alighting therefrom, which fact was known to said agents and servants or should have been known. Straus v. Railroad, 86 Mo. 421; Straus v. Railroad, 75 Mo. 185; Nelson v. Railroad, 113 Mo. App. 707. (3) The court did not err in the admission or exclusion of testimony and the verdict is not excessive.

REYNOLDS, P. J.—Respondent here, plaintiff below, on the morning of February 26, 1913, boarded a train of the defendant at St. Mary's, intending to go to Horine, a station on the line of the road of the defendant, paying her fare and obtaining a ticket, which the conductor of the train took up during the course of the journey. She seated herself in one of the passenger coaches of the train, about the third seat from the front end of the coach. When the train approached Horine station, the porter called out the name of the station as the next stop, and when the train stopped, the porter again called the station, went out on the front platform, which was the ordinary vestibule platform, raised the covering that was over the steps, took his step or footstool and placed it on the ground or on the platform at the foot of the car steps, the lower step of the car being about twenty-two inches from the level of the platform at the station. He stood there about one minute, he says. The conductor, who had been sitting in the rear of the same car in which plaintiff was seated, got up, called the station, went out of the rear of the car and stood by it on the station platform, when he ordered the porter to go forward and assist the freight agent in loading three cans of milk into one of the baggage cars, and also to assist in loading into that car a calf, which had been tied near the track. There were four cars in the train, two baggage cars, a smoker and a coach. Before going forward to attend to this the porter put his stool back

on the vestibule, and he testified that the door of the car was closed and no one was on its platform or steps. He says it took him about one minute to assist in loading the milk cans and calf. After assisting the agent in loading these, the porter signalled to the conductor to that effect, and the train, on the signal of the conductor, pulled out from the station, having stopped, as the porter said, "not less than two minutes." Plaintiff, as soon as the train had stopped, got up from her seat, picked up her bundles and went out on the front vestibule of the car in which she was riding and looked around, as she said, to see if there was anyone there to help her down. She was a woman about fifty-two years of age, and rather heavy. She neither saw anyone around to help her, nor did she see any stool at the foot of the car step, but she got down to the lower step of the car, went to step off, and the train started and threw her off and on to the ground. A young man called by plaintiff, and who was present, testified that he saw the porter go ahead and help load the calf and that after that was loaded the signal was given to the engineer to go ahead, and as he was looking at the moving train he "saw the plaintiff fall forward. The train hadn't moved more than three feet before she landed on the platform. . . . I saw her fall off, but I can't swear whether she jumped or was thrown off by the movement of the train," he said. The result of her fall was that two bones in plaintiff's right leg were broken a short distance below the knee. She was lifted up and carried into the station by the station agent and a bystander, subsequently carried over to the town of Victoria in a vehicle, and from there taken to her home, where on the evening of that day the fractured bones were set by an attending surgeon and the limb bandaged and afterwards put into a Hodgen splint. She was confined to her bed something like six weeks and at the time of the trial, which took place on

June 10, 1913, as we understand from the testimony, was still using crutches or a crutch.

The surgeon who had attended her in the first instance, testifying for plaintiff, said that while her leg was still swollen a good deal some two or three weeks before the day of the trial, which was the last time he had examined her, and while she was not then able to use the limb without the aid of a crutch and was walking with crutches, he did not think there would be a permanent injury, but that it would be quite a long while, considering the age and weight of plaintiff, before she could walk without crutches; that in the course of time he thought her limb would be as good as ever.

The other attending surgeon, as had the former, testified that there was no shortening of the limb; that in his opinion it would be a good while before plaintiff would be able to use the limb, taking into consideration the fact that she was a very large woman and considering her age; that if she were younger she would probably recover faster, but that he would not like to give an opinion as to the permanency of the stiffness of the knee, and thought that plaintiff would have to use crutches six months longer, and that the leg would give her trouble for some time.

The conductor of the train, testifying on behalf of defendant, stated that he had seen plaintiff in the car on this train; had taken up her ticket and knew that her destination was Horine station and had not seen her get off at that station; had seen only one passenger, a man, get off there; knew nothing of the accident to plaintiff until some time afterwards.

The station agent testified that as the train was moving he noticed the plaintiff on the lowest step of the car platform and just as she got ready to step down "and she jumped forward and fell on her hands and knees."

There is no direct testimony in the case as to whether the train started slowly or with a jerk.

So much for the material evidence for both par-ties.

The petition avers that before the train had stopped "for a reasonable and sufficient length of time to enable the plaintiff, using due diligence, to alight therefrom in safety and while the plaintiff, in the exercise of ordinary care and with no fault on her part, was attempting to and in the act of alighting from the train, . . . the said defendant by and through its agents . . . in charge of and operating said train, negligently, carelessly and recklessly caused said train to be started forward with a sudden jerk and bound without the knowledge of or any warning whatever to the plaintiff, thereby causing plaintiff to be thrown and to fall with great force and violence from said car and train to the ground." Alleging her injuries and suffering, "plaintiff further states that the injuries aforesaid were directly caused by the carelessness and negligence of the agents, servants and employees of defendant in charge of and operating said train, in not being present at that part of defendant's train from which plaintiff alighted, to assist and enable plaintiff to alight in safety, in not stopping said train a sufficient length of time to permit plaintiff to alight therefrom in safety, and in causing said train to move forward suddenly while plaintiff was in the act of alighting therefrom and before she had fully left said train." Damages were asked in the sum of $10,000.

The answer, after a general denial, pleaded contributory negligence. The reply was a general denial.

The trial resulted in a verdict in favor of plaintiff tiff in the sum of $3000, judgment following from which defendant has duly appealed.

The first error here assigned is to the action of the court in overruling a demurrer to the evidence at the close of the case, and in refusing to peremptorily instruct for defendant, it being argued that the petition charged specific acts of negligence, and plaintiff there-

fore cannot invoke the doctrine of *res ipsa loquitur*. We do not understand that plaintiff has invoked that doctrine and we see no indication of it in the instructions given by the court. On the evidence in the case we are of the opinion that the request for a peremptory instruction was properly refused.

The next assignment is that an instruction given for plaintiff is erroneous because there was no evidence that the train was caused to start and move suddenly forward, it being argued that it is error to submit to the jury issues which have no evidence to support them. The latter proposition admits of no denial; it is too firmly established in the jurisprudence of our State by frequent decisions of all of our appellate courts, to require citation of authority in its support. All the authorities cited by learned counsel for appellant under this second point are on that proposition. The objectionable words in the instruction complained of are those underscored in this instruction, which told the jury that to find for plaintiff, among other things, they must find, "that the agents and servants of defendant carelessly and negligently caused said train *to start and move suddenly forward* at a time when they knew or had reason to know that plaintiff had not alighted from said train." It is true that there is no direct evidence of the manner in which the train was started. Nor is there evidence that any warning of the intention to start was given to plaintiff or to any of the passengers by the conductor or any of the train crew. That the train did start is beyond question, and plaintiff's testimony is positive to the effect that the starting caused her to lose her balance and fall from the lower step of the car on to the ground. The jury having the right to draw all reasonable inferences from testimony before it, we think that this evidence was sufficient to warrant them in finding that this train had been caused to start and move suddenly forward.

But that is not the material point involved here. The real point on which liability must rest is, whether plaintiff was allowed a reasonable time to alight.

In Straus v. Kansas City, St. J. & C. B. R. R. Co., 86 Mo. 421, it is held, affirming Straus v. Kansas City, St. J. & C. B. R. R. Co., 75 Mo. 185, l. c. 429, and following and quoting from the case in 75 Mo., supra, that if a conductor "has reason to believe that any passenger who has reached his destination, has not alighted, and, though dilatory, may be in the act of alighting, and he starts his train without examination or inquiry, and such passenger is in the act of alighting when the train is started, and is thereby injured, the company will be liable."

In Nelson v. Metropolitan St. Ry. Co., 113 Mo. App. 702, 88 S. W. 1119, commencing at page 707, it is said:

"A plaintiff will not be permitted to declare upon one cause of action and recover upon another. When acts of negligence, fundamental to the right asserted, are specifically alleged, they must be proven as alleged. . . . But this well-settled rule is in its application restricted by statute to predicative facts without proof of which the cause of action pleaded cannot be established in its full scope and meaning, and not to facts that, particularizing only, may be eliminated without changing the cause of action. . . . A fair and reasonable construction of the petition leads to the conclusion that the act of negligence charged was the starting of the train with sufficient force to destroy plaintiff's equilibrium while she, exercising due care, was in the act of leaving the car. The negligence of the gripman, if any, in the manner of moving the train was immaterial. It was negligent for defendant to make any kind of a start while passengers were leaving the train at a place provided for their discharge. The manner of starting the car, its rate of speed and jerking motion are but non-essential particulars. . . .

The relation of carrier and passenger continues to the time the latter alights from the train. It was not only the duty of defendant to safely carry plaintiff, but when her destination was reached and the car stopped, to hold it stationary while she was alighting. . . . As before stated, the gravamen of the charge is the starting of the car with plaintiff in the situation described. Actual knowledge on the part of the conductor of her position is beside the real issue. His act in starting the train was tortious, either with or without such knowledge if it, without fault of her's contributing, produced her fall. . . . Under these conclusions it follows that a failure of proof with respect to either of these facts and the omission to refer to them in the instructions as essential to a recovery do not constitute substantial error."

In Kirby v. St. Louis & San Francisco R. R. Co., 146 Mo. App. 304, 130 S. W. 69, Judge Cox, speaking for the Springfield Court of Appeals, has said (1. c. 310) considering the ground of negligence charged against the defendant:

"It seems to us that a fair interpretation of this charge fixes the gravamen of the charge as the failure to hold the train a sufficient length of time to permit plaintiff to alight therefrom. It clearly does make this charge and this was all that was necessary for plaintiff to charge and prove in order to make a prima-facie case against defendant. . . . The other allegations of the petition charging that the train was caused to move forward with a violent and sudden jerk, lurch and bound were unnecessary allegations, and we can see no reason why plaintiff, by reason of having made these allegations when they were entirely unnecessary, should be required to prove them before making a case sufficient to go to the jury when to prove the other allegation was of itself sufficient."

We think that what is said in these cases very applicable to the case at bar. The real point here to be

determined was whether the plaintiff had been allowed a reasonable time in which to alight from the train. That was submitted to the jury and if that was found for plaintiff, whether or not the other averments in her petition or even included in instructions were met by substantial evidence, is immaterial.

In an instruction, given at the instance of plaintiff, the court told the jury that if they believed and found from the evidence that plaintiff was a passenger on the defendant's train, having paid her fare, "then in that event it was the duty of defendant to exercise the highest practical care to carry plaintiff safely to her destination, and it was the duty of defendant's agents and servants to stop the train at plaintiff's destination a reasonable time to allow plaintiff, by the exercise of ordinary care, to alight from said train in safety before it was started; and in ascertaining what would be a reasonable time, the jury should consider plaintiff's age, sex, physical condition and all the facts and circumstances bearing upon the question; and if the defendant's agents and servants started said train while plaintiff was proceeding, in the exercise of ordinary care, to alight from said train, and before she had a reasonable time to alight therefrom in safety, then such starting of said train was an act of negligence on the part of defendant and a breach of its duty to plaintiff as a passenger on its road." No objection is made before us to this instruction, and this, on the authority of the cases cited above, covered the real point in the case and upon the determination of which the case hinged.

On the part of defendant the court gave an instruction covering this same proposition from defendant's standpoint, and, as we think, as favorable, indeed more favorable, than defendant was entitled to. We see no reversible error in giving the instruction on which error is here assigned.

The third error assigned is to the refusal of the court to give an instruction asked by defendant, to the effect that if the jury believed from the evidence "that the train on which plaintiff was a passenger stopped at the depot platform at the station of Horine a reasonable length of time for plaintiff to alight, and while she was on the steps of the car in the act of alighting therefrom, the train started and moved slowly, and did not start with a sudden jerk and bound, and she was by reason of such starting caused to fall from the same upon the station platform, and was injured, then under the issues in this cause she cannot recover, and your verdict must be for the defendant."

It is argued that this instruction was intended to meet the negligence pleaded in the petition, and the case as made by the evidence and that if it was proper to give the instruction for plaintiff which we have before quoted, then this instruction should have been given.

We think that this instruction asked by defendant was properly refused. It is sufficient to say of it that it attempted to narrow the issue down to the fact of the starting of the train, the effect of the instruction being that if it had not been proven that the train started with a sudden jerk and bound, plaintiff could not recover. As we have said, that is not the point in issue in this case. The effect of this instruction would have been to narrow the issue to the fact of a start with "a sudden jerk and bound," and to eliminate the real issue which, as we have stated is: Was this train started before a reasonable time had been allowed plaintiff to alight? If it was so started, the manner of its starting, whether slow or fast, suddenly and with a jerk, or smoothly, is utterly immaterial. [Kirby v. Railroad, supra.]

The fourth error assigned is to the admission of testimony that no step box was placed at the steps when plaintiff was attempting to alight from the train.

It is true that in Young v. Missouri Pacific Ry. Co., 93 Mo. App. 267, l. c. 274, it is said that there is no law requiring the defendant to furnish portable steps for the use of its passengers in entering or leaving any of its cars. We do not think, however, that the admission of this testimony was reversible error, particularly as it appeared, in defendant's own evidence, that in point of fact this step box had been placed in front and below the steps by the porter when the train first stopped, and that he had removed it when he went forward to assist in loading express matter on the car. So beyond question there was no step there at the time plaintiff was attempting to alight. No instructions given in the case makes the absence of this step a ground of liability.

The fifth point made is that the court erred in excluding a written statement said to have been made by plaintiff to defendant's claim agent. It appears that a claim agent of defendant called on plaintiff after she was injured and wrote out what she said of its happening. Asking plaintiff to sign it, she refused because her attorney had advised her to sign no papers in the case. The only authorities cited in support of this offer by learned counsel for appellant are Kirkwood Gymnasium & Armory Hall Assn. v. Van Ness, 61 Mo. App. 361, l. c. 363, and Erwin v. Kansas City, Fort Scott & Memphis Ry. Co., 94 Mo. App. 289, l. c. 297, 68 S. W. 88. We are unable to find any support for counsel's proposition in either of these cases. The claim agent who wrote out this statement was a witness on the stand and gave his account of his conversation with plaintiff, so that was before the jury. The paper was not needed or used as a matter of refreshing the memory of the witnesses. At most, it was a corroboration by the witness of his own testimony, made out by himself, not signed by plaintiff, and hence properly excluded.

The sixth and final point is that the verdict is excessive. It is true, as said by our Supreme Court in Hurt v. St. Louis, I. Mt. & S. Ry. Co., 94 Mo. 255, l. c. 265, 7 S. W. 1, that in cases of this kind, where there are no circumstances of aggravation, "the law will confine the recovery to compensatory damages, and will not allow those which are punitive in their nature." When we consider the evidence in this case as to the age of the plaintiff, the extent of her injury, the time which she has suffered and the time that she necessarily must continue to feel the effects of it, although it may be true that in the course of time those effects will have worn off, and although the injury may not be in that sense permanent in its character, we are not prepared to say that the amount of the verdict is so excessive as to indicate prejudice or passion on the part of the jury. The matter of the estimation of damages in cases of this character is so entirely within the discretion of the jury, in the first instance, then by the trial court, that we, as an appellate tribunal, do not feel warranted in here interfering.

Finding no reversible error to the prejudice of the defendant, the judgment of the circuit court should be and is affirmed. *Nortoni* and *Allen, JJ.,* concur.